Chesnutt v. Peters, Comr. of Motor Vehicles

RONNIE GENE CHESNUTT, PETITIONER v. ELBERT L. PETERS, JR., COMMISSIONER OF NORTH CAROLINA DIVISION OF MOTOR VEHICLES, RESPONDENT

No. 79

(Filed 3 June 1980)

Automobiles § 2.2— driver's license—epileptic—blackout while driving—insufficient evidence of uncontrolled seizures

> The entire record, considered as a whole, does not support the conclusion of the Medical Review Board that petitioner, who suffers from epilepsy, is afflicted with an uncontrolled seizure disorder which prevents him from exercising reasonable and ordinary control over a motor vehicle while operating it upon the highways where the only evidence of record which supports the Board's findings tends to show that once or twice a year petitioner has an epileptic seizure and that with one exception when petitioner blacked out while driving and ran off the road, all the seizures have occurred in his sleep, and all the other evidence tends to show that his seizures are controlled and that he has exercised reasonable and ordinary control over his vehicle while operating it upon the highways. Therefore, the Division of Motor Vehicles was without authority to deny or withhold petitioner's license to operate a motor vehicle upon the highways of the State.

RESPONDENT appeals from decision of the Court of Appeals, 44 N.C. App. 484, 261 S.E. 2d 223 (1980), affirming judgment of *Braswell, J.*, entered 10 January 1979 in WAKE Superior Court.

Petitioner is a single, twenty-five-year-old male who has suffered epileptic seizures since age seventeen. Prior to May 1978 all seizures occurred at night during sleep. In 1976 he went to Duke University Medical Center for examination and treatment. Prior to that time he had been taking Dilantin and phenobarbital. The Duke physicians increased the dosages of the drugs he had been taking and also prescribed Mysoline. Petitioner has taken the prescribed medications since the Duke examination. Following the work-up at Duke, he had suffered only one or two seizures in his

sleep until 7 May 1978 when he blacked out while driving on U.S. 421 and ran off the road. No one was injured, and the damage to his vehicle was minimal.

The patrolman who investigated the accident recommended that petitioner be given a re-examination to determine whether his license to drive should continue.

Petitioner was re-examined by Dr. Neil A. Worden, and in August 1978 respondent cancelled petitioner's driver's license. *See* G.S. 20-9(e). Upon petitioner's request for administrative review, the North Carolina Driver License Medical Review Board conducted a hearing on 26 September 1978 and thereafter entered an order setting out Dr. Worden's findings and concluding that petitioner was afflicted with an uncontrolled seizure disorder that prevented him from exercising reasonable and ordinary control over a motor vehicle while operating it upon the highways. The Board thereupon sustained respondent's order cancelling petitioner's driving privileges. The Board further ordered that petitioner not be licensed to drive "until it has been demonstrated that his seizures are likely to remain controlled, by his having remained totally free of seizures, convulsions and blackout spells" for at least twelve months.

Petitioner sought judicial review pursuant to G.S. 150A-45 and Judge Braswell, finding that the evidence did not support the conclusion of the Medical Review Board that petitioner's condition was not controlled, reversed the Board's decision and restored petitioner's driving privilege. Respondent appealed to the Court of Appeals. That court affirmed with Judge Webb dissenting. Respondent appealed to this Court as of right pursuant to G.S. 7A-30(2).

*A. Maxwell Ruppe, attorney for petitioner appellee.*

*Rufus L. Edmisten, Attorney General, by William W. Melvin, Deputy Attorney General, and Jane P. Gray, Associate Attorney, for respondent appellant.*

HUSKINS, Justice.

Does the entire record, considered as a whole, support the conclusion of the Medical Review Board that petitioner is afflicted with an uncontrolled seizure disorder that prevents him from ex-

ercising reasonable and ordinary control over a motor vehicle? If so, the Court of Appeals erred. If not, its decision must be upheld.

G.S. 20-9(e) authorizes the Division of Motor Vehicles to deny an operator's or chauffeur's license "to any person when in the opinion of the Division such person is afflicted with or suffering from such physical or mental disability or disease as will serve to prevent such person from exercising reasonable and ordinary control over a motor vehicle while operating the same upon the highways. . . ."

"Whenever a license is denied by the Commissioner, such denial may be reviewed by a reviewing board upon written request of the applicant. . . ." G.S. 20-9(g)(4). The composition and quorum requirements of the reviewing board are specified in G.S. 20-9(g)(4). The actions of the reviewing board are subject to judicial review in the Superior Court of Wake County. G.S. 20-9(g)(4)f; G.S. 150A-43, 45.

The evidence before the Medical Review Board consisted of the testimony of petitioner Ronnie Gene Chesnutt, the testimony of his mother Mrs. Mary Chesnutt, and a letter from Dr. Neil A. Worden.

Petitioner testified that he is twenty-five years of age, lives at home with his mother, works regularly as a carpenter at a place twenty miles from home and drives to his work five days a week. He neither smokes nor drinks alcoholic beverages. He drives around 1100 miles a month, has been driving for eight years and has never been involved in an automobile accident. He has never had a seizure or a blackout while at work or while driving until the episode on 7 May 1978 when he blacked out while driving on U.S. 421 and ran off the road. Petitioner further stated that he had suffered one or two seizures in his sleep since 1976; that he takes his medication regularly. Petitioner said he was on medication before he went to Duke for a work-up in 1976; that he was taking Dilantin and phenobarbital prior to that examination and the doctors added Mysoline and changed his dosage of the other medicines.

Petitioner's mother testified that her son had suffered seizures since age seventeen; that he had suffered two seizures to her knowledge since his work-up at Duke in 1976.

Dr. Worden's letter states that Ronnie Chesnutt had a history of seizures since age seventeen. His medications include "Dilantin Grs. 1½ twice a day, phenobarbital Grs. ½ three times a day and Mysoline 200 mgm. three times a day. On this regimen he has been very well controlled until May of 1978 at which time, the patient apparently had a seizure and ran off the side of the road. . . . The patient does not have a history of alcoholism or drug abuse. . . . In addition, he has had no further seizures since the one in May 1978 and he had been seizure free for a long period of time prior to this. . . . [H]is physical examination is completely within normal limits. He shows no evidence of mental deterioration or incoordination and he appears perfectly normal in every way. He has an excellent work record and has been gainfully employed for many years. To the best of my knowledge, he takes his medications faithfully. . . . The ability to lead a busy, creative life is a necessity for most people and goes a long way towards aiding in control of seizures in those people who are so afflicted. . . . It is the opinion of neurologists at the present time that very few fields should be closed to the patient because of his seizures. . . . [I]f he has any further premonitions of seizures his medications could be so altered to adequately control the condition."

The scope of judicial review is governed by G.S. 150A-51 which provides in pertinent part that the court "may reverse or modify the decision if the substantial rights of the [petitioner] may have been prejudiced because the agency findings, inferences, conclusions, or decisions are: * * * * (5) Unsupported by substantial evidence . . . in view of the entire record as submitted. . . ." The legal test, therefore, applicable here is "the entire record as submitted." This means that when the action of an administrative agency, as here, is subjected to judicial review, the judge must apply "the entire record" test as distinguished from a review *de novo* or a review based upon the "any competent evidence" standard. "The 'whole record' test does not allow the reviewing court to replace the Board's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo* . . . . On the other hand, the 'whole record' rule requires the court, in determining the substantiality of evidence supporting the Board's decision, to take into account whatever in

the record fairly detracts from the weight of the Board's evidence. Under the whole evidence rule, the court may not consider the evidence which in and of itself justifies the Board's result, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn." *Thompson v. Board of Education*, 292 N.C. 406, 410, 233 S.E. 2d 538, 541 (1977).

Application of the foregoing principles impels the conclusion that the entire record does not support the findings of the Medical Review Board. There is no substantial evidence that petitioner has any mental or physical disability except epilepsy; and there is no substantial evidence to support the finding that petitioner's epilepsy prevents him from exercising reasonable and ordinary control in the operation of a motor vehicle on the highways. The only evidence of record which supports the Board's findings tends to show that once or twice a year petitioner has an epileptic seizure and that, with one exception, all the seizures have occurred in his sleep. Otherwise, all the evidence tends to show that his seizures are controlled and that he has exercised reasonable and ordinary control over the vehicle while operating it upon the highways. Thus, upon the entire record as submitted, the findings of the Medical Review Board are not supported by substantial evidence, and the Commissioner of the Division of Motor Vehicles was without authority to deny or withhold petitioner's license to operate a motor vehicle upon the highways of the State.

For the reasons stated the decision of the Court of Appeals is

Affirmed.