McCormick v. Peters, Comr. of Motor Vehicles

DORAN DYER McCORMICK, PETITIONER v. ELBERT L. PETERS, JR., COM-
MISSIONER OF NORTH CAROLINA DIVISION OF MOTOR VEHICLES,
RESPONDENT

No. 8010SC30

(Filed 19 August 1980)

1. **Automobiles § 2.4– driver with alcohol problem – revocation of license – suffi-
ciency of findings to support order**

Findings and conclusions by the Driver License Medical Review Board
were sufficient to support its order that petitioner not be granted driving
privileges where the Board found that petitioner had an alcohol problem;
the Board gave fair consideration to the recommendation of petitioner's
physician that he be granted driving privileges, but the recommendation did
not have to be expressly rejected by the Board; and the Board's determina-
tion that petitioner suffered from such a disease "as would serve to prevent
such person from exercising reasonable and ordinary control over a motor
vehicle" fully resolved the issue of whether, upon all the evidence, it
appeared that it was safe to permit petitioner to exercise driving privileges.
G.S. 20-9.

2. **Automobiles § 2.4– revocation of driver's license because of alcohol problem –
sufficiency of evidence**

Evidence was sufficient to support findings by the Driver License Medi-
cal Review Board that petitioner had an alcohol problem which affected his
ability to operate a vehicle safely and that he should not be licensed to drive
where the evidence tended to show that petitioner had been convicted four
times of driving under the influence of intoxicating liquor; in 1976 when his
license was cancelled, the Board concluded that petitioner had "a severe
alcohol problem with petitioner having established himself as a very danger-
ous drinking driver who cannot or will not control his drinking and driving";
after the Board ordered in 1976 that petitioner not be licensed until he had
totally abstained from alcohol consumption for one year, petitioner did
abstain for the requisite period and regained his license; on 20 January 1979,
however, petitioner was again arrested for driving under the influence; on a
medical report form which petitioner's personal physician completed, the
doctor indicated in response to the question "has applicant ever had ... an
alcohol or drug problem" that the patient "denies any"; and the doctor
recommended that petitioner be licensed without restriction.

Judge HEDRICK dissents

APPEAL by petitioner from *Hobgood (Hamilton H.), Judge.*
Judgment entered 11 October 1979 in Superior Court, WAKE
County. Heard in the Court of Appeals 3 June 1980.

McCormick v. Peters, Comr. of Motor Vehicles

This is an appeal from a judgment sustaining the decision and order of the North Carolina Driver License Medical Review Board that petitioner not be granted driving privileges.

In December 1976 petitioner appeared before the North Carolina Driver License Medical Review Board for review of an order of the Division of Motor Vehicles revoking his driving privileges. Upon review of petitioner's driving record, the Board found that he had been convicted of driving under the influence on four occasions, the most recent convictions having been in October 1972 and April 1974. Concluding that petitioner suffered from "a severe alcohol problem," the Board sustained the order withdrawing his driving privileges and ordered that he not be permitted to drive until he had demonstrated that he had maintained control over the problem by totally abstaining from the consumption of alcoholic beverages for at least a twelve-month period. Petitioner appealed from that decision to the superior court, but while that appeal was pending, petitioner's driving privileges were restored in January 1978 upon recommendation of the Driver Medical Adviser at the Division of Health Services, conditional upon medical reexamination in one year.

On 20 January 1979 petitioner was again arrested for driving under the influence of intoxicating liquor. At trial the State elected to proceed against him on a charge of reckless driving, of which petitioner was convicted on 1 February 1979. On 22 February 1979 petitioner was reexamined for licensing and was informed that he could retain his license pending evaluation by the Driver Medical Adviser at the Division of Health Services. That evaluation was completed on 26 March 1979 and cancellation of petitioner's driving privileges was recommended. On 28 March 1979 petitioner was formally notified that his license had been canceled. Pursuant to G.S. 20-9(g)(4), petitioner requested review by the North Carolina Driver License Medical Review Board of the order of the Division of Motor Vehicles canceling his operator's license. At the hearing before the Board in June 1979, Division of Motor Vehicles' records pertinent to the petitioner's driving history were considered. Petitioner offered the certificate of a medical examination by his personal physician,

Dr. Pressley Rankin, in which Dr. Rankin concluded that petitioner should be licensed without restrictions. Based on the documentary evidence and testimony presented at the hearing, the Board entered on order in which it found, among other facts, that petitioner "has an alcohol problem" and drew the following conclusions:

1. That petitioner is afflicted with or suffering from such physical or mental disability or disease as would serve to prevent such person from exercising reasonable and ordinary control over a motor vehicle while operating the same upon the highways, such disease being: an alcohol problem, with a history of driving while intoxicated; and the Commissioner's Order of Cancellation of driving privileges is justified and should be sustained.

2. That petitioner should not be granted driving privileges until he has demonstrated that he has gained and can maintain control over his problem with alcohol by totally abstaining from the consumption of alcoholic beverages for a period of not less than twelve months, such period not to begin earlier than January 20, 1979, nor should he be granted driving privileges at any time unless he is otherwise in good physical and mental health and documents such with competent medical evidence.

3. That after the granting of driving privileges at any time, petitioner should submit to medical and license examinations at periodic intervals thereafter and the results of such examinations should be furnished to the Division of Motor Vehicles.

Following the entry of the Board's decision and order, petitioner filed a petition for judicial review pursuant to G.S. 150-43, challenging the Board's findings, conclusions and decision on the grounds that they are unsupported by competent, material and substantial evidence in view of the entire record as submitted. Judgment was entered in Superior Court, Wake County, affirming the decision and order of the Medical Review Board. From that judgment petitioner appealed.

*Attorney General Edmisten by Associate Attorney Jane P. Gray and Deputy Attorney General William W. Melvin for the State.*

*Joslin, Culbertson, Sedberry & Houck by Charles H. Sedberry for petitioner appellant.*

PARKER, Judge.

Relying upon the statutory scheme of G.S. 20-9, petitioner contends that the findings of the Medical Review Board are insufficient to support the Board's order that he not be granted driving privileges and that the order of the Division of Motor Vehicles withdrawing those privileges be sustained.

G.S. 20-9(e) provides generally as follows:

The Division [of Motor Vehicles] shall not issue an operator's or chauffeur's license to any person when in the opinion of the Division such person is afflicted with or suffering from such physical or mental disability or disease as will serve to prevent such person from exercising reasonable and ordinary control over a motor vehicle while operating the same upon the highways . . . .

Subsection (g) of G.S. 20-9 creates an express exception to the mandatory language of subsection (e) by specifying that the Division "may" issue a license to any applicant covered by subsection (e) if that person is otherwise qualified to obtain a license and if that person has submitted to a physical examination by a licensed physician who has furnished a certificate to the Division of Motor Vehicles. G.S. 20-9(g)(3) specifies that:

The Commissioner is not bound by the recommendation of the examining physician *but shall give fair consideration to such recommendation* in exercising his discretion in acting upon the application, *the criterion being whether or not, upon all the evidence, it appears that it is safe to permit the applicant to operate a motor vehicle.* The burden of proof of such fact is upon the applicant. In deciding whether to issue or deny a license, the Commissioner may be guided by

McCormick v. Peters, Comr. of Motor Vehicles

opinion of experts in the field of diagnosing and treating the specific physical or mental disorder suffered by an applicant and such experts may be compensated for their services on an equitable basis. The Commissioner may also take into consideration any other factors which bear on the issue of public safety. (Emphasis added).

Pursuant to G.S. 20-9(g)(4), the Commissioner's denial of driving privileges is subject to review by the Driver License Medical Review Board, and the applicant seeking review is entitled to a full evidentiary hearing. Any decision adverse to the applicant must be in writing and accompanied by findings of fact, consisting of the Board's conclusions on each contested issue of fact, and conclusions of law.

[1] In the present case the Medical Review Board found that petitioner has an alcohol problem and concluded that he is "afflicted with or suffering from such physical or mental disability or disease as would serve to prevent such person from exercising reasonable and ordinary control over a motor vehicle while operating the same upon the highways, such disease being: an alcohol problem, with a history of driving while intoxicated ... ." That determination by the Board brings petitioner into the class of determination by the Board brings petitioner into the class of persons specified in G.S. 20-9(e) to whom "[t]he Division shall not issue an operator's or chauffeur's license." Petitioner contends, however, that because he submitted the physician's certificate specified in G.S. 20-9(g), the statutory exception to G.S. 20-9(e), recommending that he be granted driving privileges, the Medical Review Board, upon review of the decision of the Commissioner of Motor Vehicles, was required by G.S. 20-9(3) to state expressly that it was rejecting the recommendation and to make a specific finding as to "whether or not, upon all the evidence, it appears that it is safe to permit the applicant to operate a motor vehicle." We agree that the Board was required by G.S. 20-9(3) to "give fair consideration to" the recommendation of petitioner's physician, Dr. Rankin, but we do not agree that his recommendation that petitioner be licensed had to be expressly rejected.

In its 12 July 1979 decision and order, the Board did find "[t]hat on the Medical Report Form dated February 27, 1979,

Dr. Pressley R. Rankin, Jr. states that petitioner denies any problem with alcohol." That finding makes clear that the Medical Review Board considered Dr. Rankin's recommendation as required by statute, and implicit in the Board's further finding "[t]hat petitioner has an alcohol problem" is a rejection of that recommendation in the light of the other evidence presented. We hold further that the Board's determination that · petitioner suffers from such a disease "as would serve to prevent such person from exercising reasonable and ordinary control over a motor vehicle" fully resolves the issue of whether, upon all the evidence, it appears that it is safe to permit petitioner to exercise driving privileges. No other finding was required under G.S. 20-9.

[2] Having determined that the Board's findings and conclusions are sufficient to support the Medical Review Board's order, we next consider whether the evidence supports those findings. Where, as here, the action of an administrative agency is subjected to review, the governing standard is whether the agency findings or conclusions are supported by competent, material and substantial evidence in view of the entire record. "[T]he 'whole record' rule requires the court, in determining the substantiality of evidence supporting the Board's decision, to take into account whatever in the record fairly detracts from the weight of the Board's evidence. Under the whole evidence rule, the court may not consider the evidence which in and of itself justifies the Board's result, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn." *Thompson v. Board of Education*, 292 N.C. 406, 410, 233 S.E. 538, 541 (1977); *accord, Chesnutt v. Peters, Comr. of Motor Vehicles*, 300 N.C. 359, 266 S.E. 2d 623 (1980). Viewed in its entirety, the record in the present case tends to show the following:

Petitioner has been convicted four times of driving under the influence of intoxicating liquor. In 1976 when his license was canceled, the Medical Review Board concluded that petitioner had "a severe alcohol problem with petitioner having established himself as a very dangerous drinking driver who cannot or will not control his drinking and driving." After the Board ordered in 1976 that petitioner not be licensed until he

had totally abstained from alcohol consumption for one year, petitioner did abstain for the requisite period and regained his license. On 20 January 1979, however, petitioner was again arrested for driving under the influence. At the hearing before the Board he testified as follows concerning the incident:

On the occasion that I was charged with driving under the influence, I had been up to the Moore County Hospital to see my wife in the mental health ward, and I don't know, from seeing all of those people that way I just got worried about her and all. I started home and I didn't want to go to the house because I would be there by myself and I decided to shoot a game of pool. I went down there shooting pool and I drank about four of those small beers and then I started home and they stopped me.

As to the condition of the road, it had been raining all night and the glasses were fogged up and it was wet. There was not too much traffic on the road. The place I started from was about a mile from my home, and I was on my way home. The officer stopped me in Ellerbe. I had been drinking beer, and he smelled it on my breath. He charged me with driving under the influence. I did not have an attorney that appeared with me. At the trial they just charged me with reckless driving . . . .

I am not taking any medicine for alcohol. I do not feel like I have an alcoholic problem. As to how much alcohol I drink, since I got my license back it's none, hardly. When I was arrested, I had been over to the hospital to see my wife. I went down there to shoot pool because my wife was not at home. That's the first time I have been away from home at night since we've been married. There have not been any other occasions that I was drinking and driving a car. I don't drink any kind of alcohol besides beer. As to how often I drink alcohol since my license were reinstated, after I've worked twelve hours, I have stopped and carried it home, but I wouldn't drink it until I got home. I have done that twice, maybe three times. That's the only times I've drank any alcohol, about three times. I have not missed any work due to my health. I work six days a week most of the time, once in a while seven.

On the Medical Report Form which petitioner's personal physician, Dr. Rankin, completed, the doctor indicated in response to the question "[h]as applicant ever had ... [a]n alcohol or drug problem" that the patient "denies any." Dr. Rankin recommended in that report that petitioner be licensed without restriction.

Even considering Dr. Rankin's favorable report, we conclude that the record furnishes substantial, material and competent evidence to support the Board's determination that petitioner has an alcohol problem which affects his ability to operate a vehicle safely, and that he should not be licensed at the present time. The weight to be accorded Dr. Rankin's report was for the Medical Review Board to determine, and where the evidence presents two conflicting views, it is not the function of this Court to review the Board's judgment.

The judgment of the superior court sustaining the decision and order of the North Carolina Driver License Medical Review Board is

Affirmed.

Judge VAUGHN concurs.

Judge HEDRICK dissents.