LEONARD K. THOMPSON v. WAKE COUNTY BOARD OF
EDUCATION

No. 29

(Filed 14 April 1977)

1. Schools § 13— teacher dismissal — judicial review — whole record test

The standard of judicial review of a board of education's dismissal of a career teacher is the "whole record" test. Former G.S. 143-315 (now G.S. 150A-51).

Thompson v. Board of Education

2. **Schools § 13— whole record test**

While the "whole record" test does not allow the reviewing court to replace a board of education's judgment as between two reasonably conflicting views even though the court could justifiably have reached a different result had the matter been before it *de novo*, the "whole record" test does require the court, in determining the substantiality of evidence supporting the board's decision, to consider not only the evidence which justified the board's decision but also contradictory · evidence or evidence ·from which conflicting inferences could be drawn.

3. **Schools § 13— teacher dismissal — judicial review — consideration of Review Committee report**

Under the whole record rule, a trial judge reviewing a school board decision in a teacher dismissal case must not only consider the complete testimony of all the witnesses, but he must also consider the panel report of the Professional Review Committee.

4. **Schools § 13— teacher dismissal — neglect of duty — insubstantial evidence**

Evidence that a career teacher neglected his duty to maintain good order and discipline by permitting two students to settle a dispute by fighting was insubstantial in view of the entire record, and the teacher was improperly dismissed by the school board for neglect of such duty.

Justice LAKE concurs in result as to the wrongfulness of the discharge.

Justices LAKE and MOORE dissent as to the amount of damages.

PLAINTIFF appeals pursuant to G.S. 7A-30 from the decision of the Court of Appeals reported in 31 N.C. App. 401, 230 S.E. 2d 164 (1976), *(Clark, J.,* dissenting) reversing judgment for the plaintiff by *Alvis, S.J.,* entered out of session by consent of the parties 3 December 1975, WAKE Superior Court.

At the time of trial, the plaintiff, Leonard K. Thompson, was a fifty-year-old "career teacher" as defined by G.S. 115-142(a)(3). He had 12 to 13 years of teaching experience, the last 7 years of which he had taught in the Wake County Public School System. First employed by defendant Wake County Board of Education (hereinafter referred to as Board) to teach at Cary Elementary School, the plaintiff was later transferred to Apex Elementary School as part of an effort to ensure racial balance in the staff of the Wake County Public Schools. During the 1973-74 school year, Thompson was assigned to teach eighth grade health and physical education at Apex Elementary School.

Thompson had previously served as head of the Classroom Teachers Association in both Durham and Wake Counties. While at Apex Elementary, he was selected by the faculty as a school representative to the North Carolina Association of Educators.

On 11 March 1974, the Wake County Board of Education, upon the recommendation of the Superintendent of Wake County Schools (hereinafter referred to as Superintendent), voted by unanimous resolution to suspend Thompson from his teaching duties without pay and without prior notice or a hearing pursuant to G.S. 115-142 (f), on the grounds of immorality, insubordination, neglect of duty and physical or mental incapacity, G.S. 115-142 (e) (1) (b), (c), (d) and (e).

Upon being advised of the Board's action, Thompson requested a hearing pursuant to G.S. 115-142 (h) (3) (i) before a panel of the Professional Review Committee. After two days of hearings held in May 1974, the panel found that all the charges preferred against the plaintiff were untrue and unsubstantiated.

Notwithstanding the report of the panel of the Professional Review Committee, the Superintendent, as was his option under G.S. 115-142 (i) (5), submitted a written recommendation for Thompson's dismissal to the Board accompanied by the panel's report. Upon receiving notification of the Superintendent's recommendation, Thompson requested a hearing before the Board under G.S. 115-142 (i) (6). Thereupon, the Board conducted five days of hearings in July and August 1974. After the hearings, the Board by resolution ordered Thompson dismissed as a teacher in the Wake County Public Schools on the grounds of immorality, insubordination, neglect of duty and mental incapacity.

Thompson appealed from the Board's order to Wake County Superior Court requesting judicial review under G.S. 115-142 (h). The case was heard by Judge Jerry Alvis who entered an order on 3 December 1975 reversing the Board's dismissal of Thompson. The trial judge ordered the Board to reinstate Thompson to his status as a career teacher and pay him all sums that he would have received as compensation through the date of the order but for the wrongful dismissal.

On appeal, the North Carolina Court of Appeals, reversed and reinstated Thompson's dismissal.

Other facts necessary to the decision of this case will be discussed in the opinion.

*Chambers, Stein, Ferguson & Becton by Charles L. Becton and Adam Stein for the plaintiff.*

*Boyce, Mitchell, Burns & Smith by James M. Day and G. Eugene Boyce for the defendant.*

COPELAND, Justice.

G.S. 115-142 provides greater job security for career public school teachers, as defined, than existed under prior law. *Taylor v. Crisp,* 286 N.C. 488, 212 S.E. 2d 381 (1975). G.S. 115-142 (e) (1) lists the only twelve grounds upon which a career teacher may be dismissed, demoted or employed on a part-time basis. In this case, defendant Wake County School Board relied on four charges in dismissing the plaintiff—immorality, insubordination, neglect of duty and mental incapacity. G.S. 115-142 (e) (1) (b), (c), (d) and (e). In support of these charges, the Board reached seven conclusions of law based on seven findings of fact.

The trial judge found that "the Board did not reach a single conclusion of law, supported by competent evidence, which gave lawful support to its order of dismissal." The Court of Appeals held that Judge Alvis properly overruled all the Board's conclusions of law except for Conclusion of Law No. 5 relating to neglect of duty in the encouragement of order and discipline. The Court of Appeals felt this conclusion was supported by a finding based on sufficient competent evidence.

Suffice it to say, that after careful scrutiny of the record, we concur in the result reached by the Court of Appeals on the charges of immorality, insubordination and mental incapacity for the reasons stated in the opinion below. As pointed out by the Court of Appeals, several of the Board's findings of fact were supported by substantial, competent and material evidence in the light of the entire record. However, these findings while they paint a portrait of a teacher whose conduct was at times imprudent and ill-advised, do not, as a matter of law, constitute immorality, insubordination or mental incapacity so as to justify the dismissal of a career teacher. The majority opinion below has dealt with these issues in detail. We believe it would serve no useful purpose for us to plow again the same ground.

Thompson v. Board of Education

Before turning to the charge of neglect of duty sustained by the Court of Appeals, we need to examine the applicable scope of judicial review. At the time of the plaintiff's hearing before Judge Alvis, the scope of judicial review of the Board's actions was set out in G.S. 143-315 (now G.S. 150A-51). This general judicial review statute allows a court to reverse a school board decision if:

"[t]he substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

\* \* \*

"(5) Unsupported by competent, material, and *substantial evidence in view of the entire record as submitted;* . . ." (Emphasis added.)

**[1, 2]** This standard of judicial review is known as the "whole record" test and must be distinguished from both *de novo* review and the "any competent evidence" standard of review. *Universal Camera Corp. v. N.L.R.B.,* 340 U.S. 474, 95 L.Ed. 456, 71 S.Ct. 456 (1951); *Underwood v. Board of Alcoholic Control,* 278 N.C. 623, 181 S.E. 2d 1 (1971); Hanft, *Some Aspects of Evidence in Adjudication by Administrative Agencies in North Carolina,* 49 N.C. L. Rev. 635, 668-74 (1971); Hanft, *Administrative Law,* 45 N.C. L. Rev. 816, 816-19 (1967). The "whole record" test does not allow the reviewing court to replace the Board's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo, Universal Camera Corp., supra.* On the other hand, the "whole record" rule requires the court, in determining the substantiality of evidence supporting the Board's decision, to take into account whatever in the record fairly detracts from the weight of the Board's evidence. Under the whole evidence rule, the court may not consider the evidence which in and of itself justifies the Board's result, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn. *Universal Camera Corp., supra.*

The Wake County Board of Education concluded as a matter of law that plaintiff's "actions in. allowing his students to fight with each other and with him constituted neglect of duty insofar as encouragement of discipline and good order in accordance with N.C. G.S. 115-146 is concerned." The Court of Ap-

peals felt this conclusion was supported by a portion of the Board's Finding of Fact No. 7 which states, "[o]n occasion during the 1973-74 school year Mr. Thompson allowed students under his supervision to settle disputes by fighting among themselves, . . . " Arguably this finding, if supported by substantial evidence in light of the entire record, would, as a matter of law, constitute neglect of the teacher's duty imposed by G.S. 115-146 to "maintain good order and discipline."

The evidence in the record supporting this finding is limited to testimony concerning a fight between students Mike Novick and Eddie Barker. Several witnesses testified before the Board on the subject of this fight. Joe Jungers had physical education, a health class and a study hall under Mr. Thompson. He testified: "I know Mike Novick and Eddie Barker. I recall an occasion when they fight with each other. Mr. Thompson saw the fight. He did not stop it. Mike and Eddie were fighting and Mr. Thompson called to Mike and as he turned around he said 'beat the hell out of Eddie' and Eddie hit and Mike turned around and bashed the mess out of Eddie." Viewed in isolation, this testimony may constitute "substantial" evidence, but a reviewing court is not permitted to stop here under the whole record rule.

On cross-examination the witness testified: "I came in the class a bit late. I was sitting over there playing chess and they started fighting for some reason. From what I had heard Mike had been sitting in Eddie's chair and Eddie got mad at him about it. As to whether I heard Mr. Thompson say 'if you are going to act like animals, well, go ahead and beat the hell out of each other,' I did not hear those exact words. I do not recall he said anything about acting like animals. I do recall Mr. Thompson saying: 'beat the hell out of him, Eddie.' That's all I heard said. He said, 'you are making such a ruckus,' making such a big amount of noise fighting. I thought that Mr. Thompson was in the class when the fighting started. I was over there playing chess, but I don't know whether or not he was, but he was in there when I looked up there when he started talking." On redirect examination Joe Jungers added: "I do not know whether the two boys that were fighting were reprimanded or punished in any way. *This occurrence was a rarity you might say in class. . . . In the classes which I am in Mr. Thompson's room, it's usually quiet and orderly.*" (Emphasis added.)

Obviously Joe Jungers was not in a position to hear Mr. Thompson's entire statement on this occasion. He was apparently preoccupied by his chess game until at some point the noise of the fight attracted his attention.

The other witness called by the Board to substantiate the neglect of duty charge was Johnette Smith, a student under Mr. Thompson who offered the following testimony on the subject of the fight: "Two guys were fighting, started fighting. One was picking at the other, and this guy, they didn't like each other. It was Eddie Barker and Mike Novick. They would be fighting. He [apparently Mr. Thompson] would *probably* be out of the room and they would be fighting. He would come in and *more than likely* he would look at them and he would *probably* tell them *more than likely*, say, 'Go ahead and beat the hell out of each other!' He didn't care. It was in a class." (Emphasis added.)

At best, Johnette Smith presented an inconclusive and incomplete picture of what transpired on this occasion. Johnette also indicated that there "was only one fight in our class last year."

Plaintiff Leonard K. Thompson had a different recollection of the fight between Eddie Barker and Mike Novick. Mr. Thompson testified: "I arrived at that study hall and there was something going on, a scuffle. It was stopping. I did not stop it because it was somebody else there at that moment, a student. The two boys had been hitting each other. And it was stopped, but they were still angry. One of them was very angry. He was crying. He was being picked on, as occasionally happened. He had done some picking himself, and he had pulled a chair from under another student the class before. And the Novack [sic] boy, when they came down to the study hall, deliberately sat in this young man's chair, which was not an assigned seat. The boy asked him to get out and he said he wasn't going to, and so the two boys got into a scuffle, and there was an exchange of blows. I said to them, 'This is supposedly a class of exceptional students. If you cannot act like gentlemen—we are animals of the highest calibre—if you can't settle your differences by using your brains, just beat the hell out of each other!' After I made that remark, they did not exchange any more blows. They talked about it, but they did not do it."

Not only does Mr. Thompson's version of the fight differ from the students' in that the fighting stopped following his remarks, but also from his complete statement, it appears that his language was calculated to shame the boys into settling their differences peaceably. His full statement was thus a form of maintaining good order, and according to his recollection, it produced the desired result.

For reasons unknown, the Board ignored the testimony of Lula Pearl Atwater, a career teacher of thirty-two years. This witness had taught at Apex Elementary for about twenty years. At the time of her testimony, she was President of the North Carolina Association of Educators in Wake County and had been approved by the State Board of Education to serve on the Professional Review Committee. She had known Leonard K. Thompson for five or six years and was a teacher at Apex Elementary School during the year in controversy.

While admitting that she had never had the opportunity to observe Mr. Thompson in the classroom setting, she testified, "I have had occasion to observe Mr. Thompson's students during lunchroom or field days or at volleyball exercises. The students appeared to me to have been as well disciplined as the others" and "in my opinion Mr. Thompson had good discipline over his students in physical education activities, this is my observation of Mr. Thompson and the children."

She stated that she was surprised to see many of the students who were before the Board to testify. She said, "I have taught most of the same students one or two classes. As to whether I had any behavior problems with those students, you know, I am so happy you asked me I don't know what to do because I haven't slept since I saw those students here. They are *problem students* and can I go right down the line and tell you about them. They have behavior problems in the classrooms. . . . I can cite you problems that we had with those children at school . . ." Lula Pearl Atwater, with her thirty-two years experience, continued: "[W]hen I looked down that list at all those students whose names were called, most of them, they have been problems and low achievers; they're in the low-achieving level." (Emphasis added.)

Mrs. Atwater's testimony was relevant as it tended to show that Mr. Thompson was generally successful at maintaining good order and discipline at school notwithstanding the fact that

a number of his students had serious behaviorial problems. Applying the whole record rule, Judge Alvis properly took Mrs. Atwater's testimony into account.

[3]   Under the whole record rule, a trial judge reviewing a school board decision must not only consider the *complete* testimony of *all* the witnesses, he must also consider the panel report of the Professional Review Committee. Under G.S. 115-142(1)(2) the report of the panel is "deemed to be competent evidence," and when it is introduced, it becomes part of the record.

In this case the panel report cleared Mr. Thompson of all the charges, including the charge of neglect of duty. While the panel report is not determinative, it is entitled to some weight in a review of the entire record. *Universal Camera Corp., supra.* The substantial evidence standard is not altered because the Board and a panel of the Professional Review Committee disagrees. However, the evidence supporting a school board decision may appear less substantial when an impartial panel, which has observed the witnesses and dealt with the case, has drawn different conclusions than when the panel has reached the same conclusions as the school board. The significance of the panel report depends largely on the importance of the witnesses' credibility in the case. *Universal Camera Corp., supra.*

In the instant case, credibility was important to the extent that Mr. Thompson's version of the fight differed from that of two students. The fact that an impartial panel of teachers and laymen (under G.S. 115-142(h)(4), panel members cannot be employed in or be residents of the county in which the request for review is made) made findings contrary to those of the Board, detracts from the substantiality of the evidence supporting the Board's findings and conclusions.

Once all the competent evidence in the record has been examined, the reviewing court must decide if it is substantial. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Comr. of Insurance v. Fire Insurance Rating Bureau,* 292 N.C. 70, 80, 231 S.E. 2d 882, 888 (1977); *accord, Comr. of Insurance v. Automobile Rate Office,* 287 N.C. 192, 214 S.E. 2d 98 (1975). "Substantial evidence is more than a scintilla or a permissible inference." *Comr. of Insurance v. Automobile Rate Office, supra*

Thompson v. Board of Education

at 205, 214 S.E. 2d at 106; *Utilities Commission v. Trucking Company*, 223 N.C. 687, 690, 28 S.E. 2d 201, 203 (1943).

[4]    When the *whole record* is viewed, the evidence shows that Mr. Thompson ordinarily maintained good order and discipline at school activities. One may disagree strenuously with the methods he employed but on the whole they were designed to and did result in good order and effective discipline. All the evidence indicates that only one fighting outbreak occurred in Mr. Thompson's classroom during the 1973-74 school year. According to Mr. Thompson's testimony, he tried by his words to end the fight and was successful. Neither of the two students who testified directly contradict Mr. Thompson's *complete* statement on the occasion of the fight.

If a career teacher's ability to maintain good order and discipline at school is to be judged solely by *one* incident, the evidence of that incident should be clear. We hold the evidence that Mr. Thompson neglected his duty to maintain order and discipline was insubstantial in view of the entire record. While the Court of Appeals laid down the correct standard of judicial review, that court failed to apply it, as Judge Clark in his dissent correctly noted.

The Court of Appeals is

Reversed.

Justice LAKE concurs in result as to the wrongfulness of the discharge.

Justices LAKE and MOORE dissent as to the amount of damages.