PAUL OVERTON, JR. v. GOLDSBORO CITY BOARD OF EDUCATION

No. 808SC756

(Filed 7 April 1981)

**Schools § 13.2– dismissal of career teacher – neglect of duty – indictment for felony – request for leave of absence – failure to teach classes**

   The superior court did not err in finding that the decision of defendant board of education to dismiss plaintiff career teacher on 10 May 1979 for neglect of duty because he failed to return to his classes after his indictment on felony drug charges on 24 April 1979 was unsupported by substantial evidence where the evidence showed that, prior to the period in question, plaintiff's performance as a teacher had consistently been rated as satisfactory; both the school superintendent and the school principal were in contact with plaintiff after his indictment; neither man asked or told plaintiff to return to work and neither advised plaintiff that his absence was being considered neglect of his contractual duties; both the superintendent and principal acquiesced in plaintiff's decision not to return to the classroom; plaintiff's continued absence was due to his concern for what was best for his students; and plaintiff made a written request for leave of absence without pay but defendant board never acted upon such request. G.S. 150A-51.

   Judge HEDRICK dissenting.

APPEAL by defendant from *Peel, Judge.* Order entered 12 May 1980 in Superior Court, WAYNE County. Heard in the Court of Appeals 3 March 1981.

In April 1979, plaintiff, a career teacher with more than fifteen years' experience in the North Carolina public school system, was charged in a bill of indictment with felony drug charges. At the time of his indictment, plaintiff was employed by defendant as a physical education teacher at Middle School South. From the record, it appears that plaintiff first learned of his indictment through a radio news announcement on Tuesday morning, 24 April 1979. After calling his minister, plaintiff placed a telephone call to Bill Charlton, the principal of Middle School South, to tell him that he was in trouble and would not be at work that day and that, indeed, he did not know how long it would be before he would be able to return to work. Later that morning, Principal Charlton telephoned William Johnson, the Superintendent of the Goldsboro City Schools, and informed him of plaintiff's message. During the day, Johnson and the rest of the school community heard the news of the indictment against plaintiff.

Plaintiff did not return to work later that week or, indeed, for the rest of the year. On 26 April, two days after plaintiff had learned of his indictment, plaintiff met with Superintendent Johnson to inform him of the charges against him, to profess his innocence, and to review the statute dealing with teacher dismissals.

On or about 3 May 1979, Superintendent Johnson called plaintiff to his office and requested his resignation effective no later than 8 May. Plaintiff refused, and by letter dated 8 May requested a leave of absence without pay. On 10 May, having received no resignation letter, Johnson officially recommended to defendant that plaintiff be suspended without pay and that appropriate dismissal procedures be initiated for neglect of duty. Defendant adopted a resolution suspending plaintiff without pay on grounds of neglect of duty. Superintendent Johnson notified plaintiff of this action by a 16 May letter. In that same letter, Johnson advised plaintiff that he was recommending plaintiff's dismissal on the grounds of neglect of duty and inadequate performance and that, under G.S. 115-142, plaintiff was entitled to a review before a five-member panel of the Professional Review Committee. Plaintiff requested a review, which was conducted on 5 July, at which the parties stipulated that the charge of inadequate performance had been dropped. After the hearing, the panel concluded that the charge of neglect of duty was "not true and substantiated."

Nevertheless, Superintendent Johnson recommended to defendant that plaintiff be dismissed as a teacher. On 10 December 1979, at plaintiff's request, defendant held a hearing concerning the Superintendent's recommendation. After hearing evidence from Johnson, Charlton, and plaintiff, the defendant issued a Report and Order finding that plaintiff had neglected his duties as a teacher and ordering that plaintiff be dismissed from employment.

From defendant's order, plaintiff appealed to the Wayne County Superior Court which considered the transcript of the hearing before the Board and concluded that the charges against plaintiff were not substantiated. From the court's order reversing its decision, defendant appeals.

*Chambers, Stein, Ferguson & Becton, by James C. Fuller, Jr., for plaintiff appellee.*

*Taylor, Warren, Kerr & Walker, by Lindsay C. Warren Jr.
and Gordon C. Woodruff, for defendant appellant.*

HILL, Judge.

In the court below, Judge Peel noted in his order that he had carefully reviewed the transcript of plaintiff's hearing before the Board, the Report of the panel of the Professional Review Committee, the court pleadings, and the arguments of counsel. Judge Peel stated:

> Upon a full review of the whole record of the case, and having given independent consideration to the Report of the Professional Review Committee, the court is of the opinion, and so holds, that the charges brought by the Superintendent against the petitioner/appellant are not substantiated.

It is to this finding that defendant excepted and assigned error, arguing that the decision by the Board of Education was supported by substantial evidence and should have been upheld.

At the outset, we note that the trial judge's order did not track the language of G.S. 150A-51, the statute which requires the judge to set forth the reasons for reversing the Board's decision. We have, however, read his order to mean, in the applicable statutory language, that the decision by the Board of Education was unsupported by substantial evidence, G.S. 150A-51(5). Appellant has also read the order to state this. Our review of the trial court's action is limited, therefore, to the question of whether the trial court erred in finding that the Board's decision was not supported by substantial evidence.

This Court, having reviewed the whole record concerning plaintiff's alleged neglect of duty, agrees with the lower court and holds that the decision of the Board was not supported by substantial evidence and that plaintiff is entitled to reinstatement to his teaching position with the Goldsboro City Schools.

In reaching this result, we first review the proper role of the lower court in this case.

Plaintiff, in appealing to superior court for a review of defendant's decision to terminate his employment, was acting pursuant to G.S. 115-142(n). The applicable scope of judicial review of defendant's actions is set forth in G.S. 150A-51 which

allows the lower court to reverse a school board decision if:

> [t]he substantial rights of the petitioners [here the plain-
> tiff] may have been prejudiced because the agency find-
> ings, inferences, conclusions, or decisions are:
>
> \* \* \*
>
> (5) Unsupported by substantial evidence admissible under
> G.S. 150A-29(a) or G.S. 150A-30 in view of the entire record
> as submitted;

The predecessor statute to G.S. 150A-51, G.S. 143-315, was
analyzed in a context analogous to the situation before us in the
Supreme Court decision, *Thompson v. Board of Education*, 292
N.C. 406, 233 S.E. 2d 538 (1977). In *Thompson*, Justice Copeland
wrote:

> This standard of judicial review is known as the 'whole
> record' test and must be distinguished from both *de novo*
> review and the 'any competent evidence' standard of re-
> view. [Citations omitted.] The 'whole record' test does not
> allow the reviewing court to replace the Board's judgment
> as between two reasonably conflicting views, even though
> the court could justifiably have reached a different result
> had the matter been before it *de novo* ... [Citation omit-
> ted.]. On the other hand, the 'whole record' rule requires
> the court, in determining the substantiality of evidence
> supporting the Board's decision, to take into account what-
> ever in the record fairly detracts from the weight of the
> Board's evidence. Under the whole evidence rule, the court
> may not consider the evidence which in and of itself justi-
> fies the Board's result, without taking into account contra-
> dictory evidence or evidence from which conflicting infer-
> ences could be drawn. [Citation omitted.]

*Id.* at 410, 233 S.E. 2d at 541.

In reviewing the whole record before us, it is important to
note that the allegations plaintiff neglected his academic duties
revolve solely around the events which occurred after 24 April
1979, the date plaintiff heard about the criminal charges
against him. The record, which contained plaintiff's personnel
file, showed that prior to the period in question, plaintiff's per-
formance in every category had consistently been rated satis-

factory, apparently the highest rating available on the "Principal's Evaluation of Teachers" form. In March 1972, his supervising principal found that he was doing a "commendable job" and that he was a "conscientious teacher." During the academic year 1972-1973, the same principal found his work "always satisfactory." Nothing in the record indicated a contrary evaluation until plaintiff encountered problems in the spring of 1979.

Superintendent Johnson's allegation concerning plaintiff's neglect of duty focused, therefore, on the issue of plaintiff's remaining away from school from 24 April 1979 until the Board's suspension of plaintiff without pay on 10 May 1979. The Board, in its 12 December 1979 order found as fact that neither the principal nor the superintendent gave plaintiff permission to absent himself from his teaching position or told him to stay at school. The Board further found that plaintiff's decision not to return to his teaching duties was voluntary and constituted neglect of duty.

In addition to being completely silent as to plaintiff's prior "commendable" performance, these findings of fact failed to give any weight to the following clear and uncontroverted evidence: During the period of time from 24 April to 10 May, both the Principal of Middle School South and Superintendent Johnson were in contact with the plaintiff. Neither of these two men asked or told plaintiff to return to work. Neither advised him that his absence was being considered neglect of his contractual duties. It appears that both men acquiesced in plaintiff's decision not to return to the classroom. Furthermore, both Principal Charlton and Superintendent Johnson admitted at the hearing that, although they may not have told plaintiff so, they agreed that it would be in the best interest of plaintiff's students that plaintiff not return to the classroom while charges were pending against him. The record also is clear that plaintiff's continued absence was due to his concern for what was best for his students.

There was also uncontroverted evidence that plaintiff requested leave without pay. From the record, it appears that defendant never responded to this request, but, instead, sought plaintiff's dismissal. In this regard, the case before us is clearly distinguishable from two cases cited by defendant. *Miller v.*

*Noe*, 432 S.W. 2d 818 (Ky., 1968), and *Miller v. Board of Education of Jefferson County, Ky.*, 54 FRD 393 (1971), *aff'd. per curiam* 452 F. 2d 894 (Sixth Cir. 1971), both dealing with the same teacher dismissal. The *Miller* cases dealt with a teacher's taking a leave of absence despite the fact that he had requested, but had been denied, leave by the Board of Education. The courts held that this action constituted a vacation of the teacher's position and that the teacher was not entitled to reinstatement. In the case *sub judice*, there was no evidence that the Board denied plaintiff's request for leave or, indeed, that it ever acted on it.

The case of *Board of Education v. Mathews*, 149 Cal. App. 2d 265, 308 P. 2d 449 (1957), is also inapposite. The teacher in *Mathews* was dismissed because she failed on several occasions to return to the classroom *after having been ordered to do so.* Plaintiff, in this case, was never told to return to the classroom. Furthermore, Superintendent Johnson testified that it was normal practice to give an employee an opportunity to correct a situation before seeking a dismissal. Plaintiff never had that opportunity.

While we agree with defendant that the report of the panel of the Professional Review Committee should not have been solely determinative of the issue of plaintiff's neglect, we find that the record before us supports its conclusion that:

> Mr. Overton made good faith efforts to communicate with his superintendent and principal and to cooperate with them. He was not told that he should return to the classroom under these circumstances. A reasonable man could assume that his continued absence was approved until he was instructed otherwise.

In reviewing the facts of this case, this Court has been acutely aware of the problems presented to a local school board by the events surrounding plaintiff's indictment. It is, at best, a difficult situation for school officials, teachers, and students. It would appear, however, that plaintiff's action in requesting a leave of absence until he could be cleared of criminal charges was the most prudent course of action. In light of all the evidence concerning plaintiff's general performance and, more particularly, concerning his performance from 24 April to 10 May 1979, this Court finds that defendant's decision to dismiss plaintiff was not supported by substantial evidence.

The decision of the lower court is, therefore,

Affirmed.

Judge WEBB concurs.

Judge HEDRICK dissents.

HEDRICK, Judge dissenting:

I disagree with the majority that Judge Peel's statement that "the charges brought by the Superintendent against the petitioner/appellant are not substantiated" is the same as the "decision of the Board of Education is unsupported by substantial evidence. . . ." G.S. § 150A-51 requires the reviewing court, if it reverses the decision of the Board, to set down in writing its reasons therefor. My reading of that portion of the opinion in *Thompson v. Wake County Board of Education*, 292 N.C. 406, 233 S.E. 2d 538 (1977), quoted by the majority is that if, upon review, the "whole record" presents reasonably conflicting views, and the Board's decision represents one of those views, it is the duty of the reviewing court to affirm. Otherwise, the reviewing court would merely be substituting its own decision for that of the Board. In my opinion, Judge Peel merely substituted his own decision for that of the Board when he stated that "the charges brought by the Superintendent against the petitioner/appellant are not substantiated." If Judge Peel, after reviewing the "whole record," had concluded that the Board's decision was unsupported by substantial evidence and reversed, the Board would be informed wherein and how it erred, and we could study the "whole record" and determine whether the reviewing court erred. In essence, Judge Peel conducted a *de novo* hearing from the record and made *his own* decision based upon the evidence in that record, and the majority has reviewed Judge Peel's *de novo* decision and affirmed.

I vote to vacate the order from which the appeal was taken to this Court, and to remand the case to the superior court for a review of the whole record to determine whether that record presents reasonably conflicting views and whether the decision of the Board represents one of those views, and if it does, affirm, but if it does not, reverse and set down in writing wherein the Board erred within the parameters of G.S. § 150A-51.