280 S.E.2d 520 (1981)
In the Matter of the Appeal from the ENVIRONMENTAL MANAGEMENT COMMISSION FINAL ORDER GRANTING a CERTIFICATE OF AUTHORITY to ORANGE WATER AND SEWER AUTHORITY PURSUANT TO G. S. 162A-7.
No. 8010SC1069.
Court of Appeals of North Carolina.
July 21, 1981.
*524 Claude V. Jones, Durham, for petitioner-appellee, Orange Water and Sewer Authority.
Emery B. Denny, Jr., Durham, for intervenor-appellee, Town of Chapel Hill.
Michael B. Brough, Carrboro, for intervenor-appellee, Town of Carrboro.
Atty. Gen. Rufus L. Edmisten by Sp. Deputy Atty. Gen. W. A. Raney, Jr., Raleigh, for intervenor-appellee, the Board of Trustees of the University of North Carolina at Chapel Hill, and for appellee, the Environmental Management Commission.
Pinna & Corvette by T. E. Corvette, Jr., Raleigh, and Singleton, Murray, Harlow and Little by David A. Harlow, Fayetteville, for intervenors-appellants, Cane Creek Conservation Authority, Lower Cape Fear Water and Sewer Authority, Edward Johnson, Forrest Young, Cecil Crawford, and Teer Farms, Inc.
MORRIS, Chief Judge.
The first assignment of error that we shall consider is whether the superior court judge erred in affirming the decision of the Commission, which was made without the filing or consideration of an environmental impact statement. The requirement that State agencies prepare environmental impact statements of proposed projects is contained in the provisions of North Carolina's Environmental Policy Act, G.S. 113A-1 et seq. An analysis of the question posed in the case sub judice must, therefore, begin with an examination of that Act.
Despite the fact that the Environmental Policy Act became effective almost ten years ago, our courts have rendered few decisions clarifying what we read to be a mandate for State agencies to take an active role "to conserve and protect ... [the State's] natural resources and to create and maintain conditions under which man and nature can exist in productive harmony." G.S. 113A-3. The purposes of the Act are, inter alia, to declare a State policy which encourages "the wise, productive, and beneficial use of the [State's] natural resources... without damage to the environment," which maintains a healthy environment, and which preserves the natural beauty of the State. G.S. 113A-2. A further purpose is to require agencies of the State to consider and report upon environmental aspects and consequences of their actions which involve the expenditure of public moneys. Id.
The requirement of an environmental impact statement, as described in the provisions of G.S. 113A-4(2), clarifies the sort of consideration of environmental values and inter-agency cooperation compelled by the Act:
§ 113A-4. Cooperation of agencies; reports; availability of information.  The General Assembly authorizes and directs that, to the fullest extent possible:
* * * * * *
(2) Any State agency shall include in every recommendation or report on proposals for legislation and actions involving expenditure of public moneys for projects and programs significantly affecting the quality of the environment of this State, a detailed statement by the responsible official setting forth the following:
a. The environmental impact of the proposed action;
b. Any significant adverse environmental effects which cannot be avoided should the proposal be implemented;
c. Mitigation measures proposed to minimize the impact;
d. Alternatives to the proposed action;
e. The relationship between the short-term uses of the environment involved in the proposed action and the maintenance and enhancement of long-term productivity; and

*525 f. Any irreversible and irretrievable environmental changes which would be involved in the proposed action should it be implemented.
Prior to making any detailed statement, the responsible official shall consult with and obtain the comments of any agency which has either jurisdiction by law or special expertise with respect to any environmental impact involved. Copies of such detailed statement and such comments shall be made available to the Governor, to such agency or agencies as he may designate, and to the appropriate multi-county regional agency as certified by the Director of the Department of Administration, shall be placed in the public file of the agency and shall accompany the proposal through the existing agency review processes. A copy of such detailed statement shall be made available to the public and to counties, municipalities, institutions and individuals, upon request.
The requirement of the impact statement is designed, therefore, to provide a mechanism by which all affected State agencies raise and consider environmental factors of proposed projects.
With this background of the Environmental Policy Act before us, the first question we must consider is whether the issuance of a certificate authorizing acquisition of land for the construction of a reservoir constitutes, on the part of the Commission, a "recommendation or report on proposals for legislation and actions involving expenditure of public moneys for projects and programs significantly affecting the quality of the environment ...," G.S. 113A-4(2), thereby necessitating an environmental impact statement.
The question of whether certification action by the Commission constitutes State action triggering the preparation of an impact statement is one of first impression in this jurisdiction. Under federal law, however, the issue is well decided. Under the National Environmental Policy Act, 42 U.S.C. § 4321 et seq., and specifically 42 U.S.C. § 4332(2)(C), all federal agencies must include an impact statement on "major Federal actions significantly affecting the quality of the human environment...." "Federal action" has been interpreted to mean "not only action undertaken by the agency itself, but also any action permitted or approved by the agency." Sierra Club v. Morton, 514 F.2d 856, 875 (D.C.Cir.1975), cert. dismissed 424 U.S. 901, 96 S.Ct. 1091, 47 L.Ed.2d 105, reversed on other grounds 427 U.S. 390, 96 S.Ct. 2718, 49 L.Ed.2d 576 (1976). In Sierra Club v. Morton, the District of Columbia Court of Appeals held that, since development of coal resources in the Northern Great Plains Province was subject to federal approval, federal action necessitating an impact statement was involved. Similarly, in Davis v. Morton, 469 F.2d 593 (10th Cir. 1972), the Tenth Circuit Court of Appeals held that the Secretary of the Interior's authority to ratify or reject leases relating to Indian lands constituted major federal action necessitating a study and evaluation of the environmental impact of the project. See also Greene County Planning Board v. Federal Power Com'n, 455 F.2d 412 (2d Cir. 1971), cert. denied, 409 U.S. 849, 93 S.Ct. 56, 34 L.Ed.2d 90 (1972).
A determination of whether certification by the Environmental Management Commission is considered State action triggering the necessity of an impact statement is aided by a review of the Commission's function in exercising this authority. Under the provisions of G.S. 162A-7(c), the Environmental Management Commission is directed to "issue certificates only to projects which it finds to be consistent with the maximum beneficial use of the water resources in the State...." In doing so, the Commission must consider:
(1) The necessity of the proposed project;
(2) Whether the proposed project will promote and increase the storage and conservation of water;
(3) The extent of the probable detriment to be caused by the proposed project to the present beneficial use of water in the affected watershed and resulting damages to present beneficial users;

*526 (4) The extent of the probable detriment to be caused by the proposed project to the potential beneficial use of water on the affected watershed;
(5) The feasibility of alternative sources of supply to the petitioning authority and the comparative cost thereof;
(6) The extent of the probable detriment to be caused by the use of alternative sources of supply to present and potential beneficial use of water on the watershed or watersheds affected by such alternative sources of supply;
(7) All other factors as will, in the Board's opinion, produce the maximum beneficial use of water for all in all areas of the State affected by the proposed project or alternatives thereto.
G.S. 162A-7(c). From a reading of this mandate, it appears obvious that the Legislature, in granting the Commission the authority to issue certificates authorizing land and water rights acquisition, intended that the Commission consider carefully not only the development of water resources but also the effect of that development on present beneficial users within the watershed. When G.S. 162A-7(c) is read in conjunction with North Carolina's Environmental Policy Act, it becomes apparent that certification action by the Commission is State action which, if it significantly affects the environment, necessitates an impact statement.
The proposed Cane Creek reservoir affects some 700 acres of land most of which is woodland. There was ample evidence at the hearing that there are potentially serious, adverse environmental effects which cannot be avoided should the reservoir be constructed. There was also ample evidence that there were several viable alternatives to the Cane Creek project. We believe that, in this situation, the statutory requirement that the State action significantly affect the environment has been met.
This Court, therefore, having reviewed the federal cases requiring environmental impact statements in the granting or denial of licenses and permits, having compared the federal and state environmental policy acts, and having studied the function of the Commission in the certification process, concludes that the North Carolina Environmental Management Commission should have had before it a final environmental impact statement before rendering its decision to grant a certificate for OWASA to proceed with the Cane Creek reservoir.
In so holding, this Court is not dictating what the final decision of the Environmental Management Commission should be or even what effect an impact statement should have on that decision. It is not for this Court to substitute its judgment for that of the Commission as to the environmental consequences of the proposed reservoir. See, e. g., Orange County v. Dept. of Transportation, 46 N.C.App. 350, 265 S.E.2d 890 disc. review denied, 301 N.C. 94, 273 S.E.2d 299 (1980). It is proper, however, for this Court to review the manner in which an agency decision has been made to insure that environmental consequences have been considered in the manner prescribed by law. Id.
In finding that an environmental impact statement is necessary, we have rejected appellees' argument that, in the present case, "environmental issues were thoroughly discussed and anyone who wished to present their [sic] views on environmental impacts could participate in the administrative hearing." This reasoning defies the clear mandate of the act that State agencies assume the responsibility of studying and considering environmental consequences of proposed actions. This duty may not be avoided on the theory that interested parties will perform it. Nor is the provision of a forum for discussion of environmental issues sufficient.
At this point we note that an environmental impact assessment of the proposed Cane Creek reservoir was prepared for OWASA. At the hearing, however, substantial deficiencies in both the environmental analysis as well as the economic *527 analysis of the proposed project were identified by parties to the proceeding, including the U. S. Army Corp of Engineers. That assessment, therefore, was not adequate to perform the function required of an environmental impact statement.
In making our decision, this Court has also rejected appellees' argument that the U. S. Army Corp of Engineers' future compliance with the National Environmental Policy Act[*] fulfills the obligations of the Commission to file an environmental impact statement with its certification. We believe that, as in the federal system, the purpose of an environmental impact statement is to provide the responsible State agency with a useful decisionmaking tool. See, e. g., Minnesota Public Interest Research Group v. Butz, 541 F.2d 1292 (8th Cir. 1976), cert. denied, 430 U.S. 922, 97 S.Ct. 1340, 51 L.Ed.2d 601 (1977). In order for the statement to be a decision-making tool, the responsible State agency must have the statement before it when it is determining the action it is going to take or recommend. In the present case, the fact that the U. S. Army Corp of Engineers was in the process of preparing an environmental impact statement is not sufficient to comply with the requirement that the Commission itself consider the statement and that the Commission circulate the environmental impact statement among other State agencies which, because of special expertise or jurisdiction, have an interest in the environmental impacts involved.
Because the Commission did not have a final environmental impact statement as required by G.S. 113A-4(2) when it made its decision to issue a certification for the Cane Creek reservoir, the superior court judgment finding that the decision of the Commission was not affected by any error of law (see, G.S. 150A-51) must be vacated. The matter must be remanded to the Environmental Management Commission for a review of OWASA's petition in light of an environmental impact statement.
Because of the likelihood that this highly contested case will, after reconsideration by the Commission, proceed through the judicial review process again, we deem it necessary to address the question, raised by the appellants, of whether the superior court judge applied the proper scope of review in determining the propriety of the Commission's action. His judgment as amended contained the following introductory paragraph:
"This matter was heard before the undersigned Judge on Petition for Review of a decision of the Environmental Management Commission (Commission or EMC) and a Petition to Reopen the matter by remanding it to the EMC for the consideration of additional evidence. While the Court has not read the entire Record which was before the EMC, it has considered the pertinent portions of the Record as referred to in the petition and briefs of the parties, it having been stated by counsel for petitioners on the hearing in open court that some portions of the Record were not material to the exceptions taken and questions raised and no useful purpose would be served by considering those portions and the Court has also considered the briefs filed by the parties and the oral arguments made by counsel for the parties. Based on the entire record as herein stated, as well as the briefs and arguments of counsel, the Court finds and concludes that...." [Emphasis added.]
This Court finds that the review described in the amended judgment did not comport with the "whole record" test required by the North Carolina Administrative Procedure Act, G.S. 150A-1, et seq., specifically, G.S. 150A-51(5). In Thompson v. Board of Education, 292 N.C. 406, 233 S.E.2d 538 (1977), the Supreme Court described the requirements of the test:
[T]he "whole record" rule requires the court, in determining the substantiality *528 of evidence supporting the ... [agency's] decision, to take into account whatever in the record fairly detracts from the weight of the ... [agency's] evidence. Under the whole evidence rule, the court may not consider the evidence which in and of itself justifies the Board's result, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn.
Id. at 410, 233 S.E.2d at 541. Under the whole record test, the judge reviewing an administrative decision must consider the complete testimony of all the witnesses. Thompson v. Board of Education, supra.
In the present case, it is impossible to determine from the judgment entered by the superior court exactly what the judge reviewed. It is clear, however, that his review did not encompass the entire record and, therefore, fell short of the statutorily mandated scope of review. We deem strict adherence to the whole record test especially important in the instant case where the proceedings are held before a commission which is part of the executive branch of State government and the parties to the proceeding include at least one other arm of State government (the University of North Carolina). No party to this appeal has raised the issue of constitutional due process, nor do we address that issue here. We do hold, however, that, under the facts of this case, a complete review of the agency decision by the judicial branch of government, i. e. by the Wake County Superior Court, is absolutely essential.
In this appeal, appellants also raise the question of whether the decision of the Commission, which was, to some degree, predicated upon its determination that the Haw River and Lake Jordan did not present viable alternatives to the Cane Creek reservoir, was precluded by the doctrine of collateral estoppel. Appellants argue that the case of Conservation Council of North Carolina v. Froehlke, 435 F.Supp. 775 (M.D.N.C.1977), which contained numerous findings of fact supportive of the use of these bodies of water as a public water source, was res judicata on the issue of water quality and, therefore, barred the Commission from its determination of that issue. We reject this contention. Since the plea of res judicata ordinarily may be maintained only where "there is an identity of parties, subject matter, and issues," Kleibor v. Rogers, 265 N.C. 304, 144 S.E.2d 27 (1965), the doctrine is clearly not applicable to this case. Neither the parties nor the issues being considered is identical in the two cases.
Finally, we note that, in their brief, appellants have raised numerous evidentiary questions. Since these questions are unlikely to recur on the remand of this case, we deem it unnecessary to address them.
The decision of the Wake County Superior Court is vacated, and this case is remanded to the Environmental Management Commission for action consistent with this opinion.
Vacated and remanded.
WEBB and WHICHARD, JJ., concur.
NOTES
[*] Under 33 U.S.C. § 1344, the Corp of Engineers must issue to OWASA a dredge and fill permit which, under the national act, necessitates the Corps' filing of an environmental impact statement.