DR. LEO W. UICKER v. THE NORTH CAROLINA STATE BOARD OF DENTAL EXAMINERS

No. 8810SC137

(Filed 4 April 1989)

**Physicians, Surgeons, and Allied Professions § 6.2— dentist— failure to discover patient's cancer—use of unlicensed personnel to practice dentistry—sufficiency of evidence to suspend license**

There was substantial evidence to support respondent's findings which in turn supported its conclusions, and the trial court therefore erred in overturning respondent's decision to suspend petitioner's license to practice dentistry for six months and to place him on probation for five years where the evidence tended to show that petitioner examined a patient at a time when he had cancerous lesions in his mouth and a large

cancerous lump on his neck, but petitioner failed to discover the oral cancer and refer the patient to an oncologist for further diagnosis and treatment; and failure to discover the condition and refer the patient was negligence and malpractice under N.C.G.S. § 90-41(a)(12) and (a)(19). Furthermore, findings and conclusions concerning petitioner's use and employment of unlicensed personnel to practice dentistry were likewise supported by substantial evidence where it was undisputed that assistants who worked for petitioner took dental x-rays and placed and adjusted dentures in patients' mouths; these activities are deemed to be the practice of dentistry; and it was undisputed that each assistant practiced dentistry without a license while under petitioner's supervision and that such practice was a violation of N.C.G.S. § 90-41(a)(6), (a)(13), and (a)(21).

APPEAL by respondent from judgment of *Robert L. Farmer, Judge,* entered 14 September 1987 in WAKE County Superior Court. Heard in the Court of Appeals 8 June 1988.

*Walter L. Horton, Jr., for petitioner appellee.*

*Bailey & Dixon, by Ralph McDonald and Alan J. Miles, for respondent appellant.*

COZORT, Judge.

The State Board of Dental Examiners (hereinafter the Board), suspended Dr. Leo W. Uicker's license to practice dentistry after a hearing revealed that Dr. Uicker failed to notice a large cancerous mass in the mouth and on the neck of one of his patients. The evidence also revealed that Dr. Uicker permitted unlicensed hygienists to practice dentistry. Dr. Uicker appealed the Board's decision to suspend his license for six months and to place him on probation for five years. The Board's decision was reversed by the Wake County Superior Court. We vacate the trial court's order and reinstate the Board's decision.

Dr. Uicker practiced general dentistry one day per week at the Edwards, Henson, Lambeth and Hammer Clinic in Conover in addition to practicing in Charlotte at the time of the incidents in question. John Coffey had suffered pain in his mouth and throat and went to the Conover Clinic for treatment. Dr. Uicker examined Mr. Coffey on 14 April 1986 and decided to pull one of his teeth

UICKER v. N.C. BD. OF DENTAL EXAMINERS

[93 N.C. App. 295 (1989)]

to try to relieve his pain. On 21 April 1986 Mr. Coffey returned to the clinic to have Dr. Uicker fit him with an upper denture.

The pain in Mr. Coffey's mouth continued, and he sought treatment with his family doctor. Mr. Coffey's family physician examined his mouth and discovered a lesion that he suspected was cancerous. Mr. Coffey was then referred to Dr. Harry King, a head and neck specialist. Dr. King examined Mr. Coffey on 29 April 1986. Dr. King discovered a "large ulcerating mass" in Mr. Coffey's mouth and a large lump on the right side of his neck. Dr. King performed a biopsy on the lesion and determined that Mr. Coffey had oral cancer. Mr. Coffey was then referred to another specialist, Dr. Brian Matthews, who saw him on 2 May 1986 and confirmed Dr. King's diagnosis.

After a hearing, the Board made the following relevant findings:

5. On April 14 and 21, 1986, Mr. Coffey had oral cancer.

6. An individual acting in accordance with the standard of care for the practice of dentistry in North Carolina would or should have discovered this oral cancer on April 14 and 21, 1986, and advised Mr. Coffey of the need for immediate further care of this condition.

7. Respondent failed and neglected to discover this condition or, having discovered it, failed to advise Mr. Coffey of the need for immediate further care or treatment.

Based on those findings the Board concluded in part as follows:

1. The failures and neglect described in Findings of Fact 2 through 7 constituted negligence in the practice of dentistry and malpractice in the practice of dentistry in violation of N.C. Gen. Stat. §§ 90-41(a)(12) and 90-41(a)(19).

Dr. Uicker also appealed the Board's findings and conclusions regarding the practice of dentistry by unlicensed hygienists under his supervision. Three assistants who worked for Dr. Uicker testified at the hearing that they performed x-rays and placed and adjusted dentures in the patient's mouth while under Dr. Uicker's supervision and control. Each testified that she was unlicensed as a dental hygienist or dentist. Only one testified that she had any training as a dental assistant. The Board made findings based on their testimony and concluded that Dr. Uicker violated N.C. Gen. Stat. § 90-41(a)(6), (a)(13), and (a)(21) (1981).

Dr. Uicker's license was suspended for six months, and he was placed on a five-year probation subject to completion of a course of study set by the Board. The Board's decision was reversed without explanation by the Wake County Superior Court and remanded for further proceedings. The Board appeals.

The issue before us is whether the Board's findings are supported by competent evidence and whether the Board's conclusions are supported by the findings. Based on the whole record, we find the Board's findings are supported by substantial evidence and the Board's conclusions are correct as a matter of law.

The scope of review of final agency decisions is governed by N.C. Gen. Stat. § 150A-51 (1985), the statute in effect at the time this case was before the superior court, which provided: "Based on the record and evidence presented to the court, the court may affirm, reverse, or modify the decision or remand the case to the agency for further proceedings." N.C. Gen. Stat. § 150A-51 (1985), *amended by* N.C. Gen. Stat. § 150B-51(b) (1987). As noted above, Chapter 150B applies to petitions filed on or after 1 September 1987 and is, therefore, not applicable because Dr. Uicker's petition was filed 29 April 1987. Nonetheless, our Supreme Court has held that "[a]lthough the 1985 amendment of former N.C.G.S. § 150A-51 deleted the phrase 'in view of the entire record as submitted,' we hold that the [1985] amendment maintains the whole record test for judicial review under the Administrative Procedures Act." *In re Appeal of K-Mart Corp.*, 319 N.C. 378, 380, 354 S.E. 2d 468, 469 (1987).

The whole record test means that the courts are bound by a Board's findings if the Board's findings "are supported by competent, material, and substantial evidence in view of the entire record as submitted." *Id.* We are not to look at the whole record *de novo* and decide whether we could reach a different result. *Thompson v. Wake County Bd. of Ed.*, 292 N.C. 406, 410, 233 S.E. 2d 538, 541 (1977). "On the other hand, the 'whole record' rule requires the court, in determining the substantiality of evidence supporting the Board's decision, to take into account whatever in the record fairly detracts from the weight of the Board's evidence." *Id.* We find that the Board's findings are supported by substantial evidence, and the trial court erred in reversing the Board.

Dr. King testified that in his expert opinion the cancer inside Mr. Coffey's mouth would have been "easily observable" six months

before Mr. Coffey was treated by Dr. King on 29 April 1986. Dr. King said that the mass on Mr. Coffey's neck, measuring seven centimeters on 29 April 1986, would have been "easily visible without palpation" (i.e., visible without examination or exploration by touching) three to four months before Dr. King treated Mr. Coffey. Mr. Coffey saw Dr. King on 29 April 1986, a mere eight days after Dr. Uicker had last seen Mr. Coffey on 21 April 1986. During his diagnosis Mr. Coffey told Dr. King that the lump on his neck had not changed since the last time he saw Dr. Uicker. It was Dr. King's expert opinion that there was no significant change in the mouth and neck tumors during the eight-day interval between Dr. Uicker's last treatment and Dr. King's examination.

Dr. Brian Matthews, another cancer specialist who treated Mr. Coffey, examined Mr. Coffey on 2 May 1986. He testified that Mr. Coffey's type of cancer was slow growing and that there had probably been some change in the mouth lesions from the time Dr. Uicker saw the patient until Dr. Matthews examined him. Dr. Matthews stated, however, that the mouth lesions would have been evident on 14 April 1986 when Dr. Uicker first treated Mr. Coffey. The nodes on Mr. Coffey's neck would probably have been observable on 14 April 1986, but Dr. Matthews could not say that the nodes were observable with a reasonable medical certainty.

Dr. Uicker offered the expert opinion of Dr. Harold Pillsbury, a head and neck surgeon, who testified that "over a period of *several weeks* there could be a very rapid, dramatic growth of a cancer." (Emphasis added.) But Dr. Pillsbury also said that in Mr. Coffey's case, "I certainly would say that the whole thing couldn't have grown in two weeks . . . ."

We believe that the Board's finding that on 14 April and 21 April 1986 Mr. Coffey had oral cancer is supported by substantial evidence in view of the entire record.

Dr. Dean Powell, an expert in general dentistry, testified that he was familiar with the standard of care for dentists in observing oral cancer and on advising patients with oral cancer. He said that a patient with oral cancer should immediately be referred to an oncologist (cancer specialist) or an oral surgeon.

Finally, Dr. Uicker testified that he performs oral cancer screenings on all of his patients. He agreed with Dr. Powell that had he seen Mr. Coffey's oral cancer he would have referred him im-

mediately. Dr. Uicker said, "Whether I got momentarily distracted or what, I don't know, but, apparently, he [Mr. Coffey] had a lesion of some significance that I just, simply, did not see."

We believe substantial evidence supports the Board's findings that a dentist acting with reasonable care would have discovered this oral cancer on 14 April and 21 April 1986 and referred Mr. Coffey for further diagnosis and treatment. Dr. Uicker's failure to discover this condition and refer Mr. Coffey was negligence and malpractice under N.C. Gen. Stat. § 90-41(a)(12) and (a)(19) (1985), respectively.

The findings and conclusions concerning Dr. Uicker's use and employment of unlicensed personnel to practice dentistry are likewise supported by substantial evidence. It was undisputed that each of the assistants involved took dental x-rays and placed and adjusted dentures in the patient's mouth. These activities are deemed to be the practice of dentistry. N.C. Gen. Stat. § 90-29(b)(8) and (b)(9) (1985); see also 21 N.C. Admin. Code 16H.0202. It was also undisputed that each practiced dentistry without a license while under Dr. Uicker's supervision and that such practice was a violation of N.C. Gen. Stat. § 90-41(a)(6), (a)(13) and (a)(21) (1985).

The order of the trial court is vacated, and the case is remanded to the Superior Court of Wake County with instructions to reinstate the Board's decision.

Vacated and remanded.

Judges JOHNSON and PARKER concur.