STATE OF NORTH CAROLINA EX REL. COMMISSIONER OF INSURANCE, APPELLEE v. NORTH CAROLINA RATE BUREAU, APPELLANT, IN THE MATTER OF A FILING DATED SEPTEMBER 1, 1987 BY THE NORTH CAROLINA RATE BUREAU FOR REVISED WORKERS' COMPENSATION INSURANCE RATES

No. 8810INS599

(Filed 7 November 1989)

**Master and Servant § 80 (NCI3d)— workers' compensation—rates**

In setting the rates for workers' compensation insurance the Commissioner erred in relying on the Commission's expert witness who failed to recognize that a reasonable margin for deviations and dividends must be calculated into the underwriting profit provision and erred in failing to explain the steps by which he arrived at the figure for underwriting profit; however, the Commissioner did not use an arbitrary or capricious method in selecting a 13% target return, was not required to take into account the volatility of unearned premium, loss, and loss expense reserve funds, and did not rely on market data from Virginia or South Carolina in arriving at a negative underwriting provision. Moreover, this proceeding must be remanded for the Commissioner to clarify the evidence upon which he relied to reach a 19.5% provision for production costs and general expenses, and to the extent that the ordered provision was based on countrywide data where North Carolina data was available, it must be reconsidered.

**Am Jur 2d, Workmen's Compensation §§ 79-81.**

STATE ex rel. COMR. OF INSURANCE v. N.C. RATE BUREAU

[96 N.C. App. 220 (1989)]

APPEAL by defendant North Carolina Rate Bureau from the Commissioner of Insurance entered 22 December 1987. Heard in the Court of Appeals on 11 January 1989.

On 1 September 1987, the North Carolina Rate Bureau filed for a rate level change for workers' compensation insurance. The filing requested a +16.8% rate level change in the overall premium level, based on an expense provision for production costs and general expenses of +22.5% and a provision for profit and contingencies of 2.5%. The Commissioner ordered an overall rate change of +4.4% based on a combined provision for production costs and general expenses of 19.5% and a provision for underwriting profit and contingencies of −2.5%.

The Rate Bureau appeals pursuant to G.S. 58-9.4.

*Hunter & Wharton, by John V. Hunter III, and Parker, Sink, Powers, Sink, Potter & Nelson, by E. Daniels Nelson, for appellee.*

*Young, Moore, Henderson & Alvis, P.A., by Charles H. Young, Jr. and R. Michael Strickland, for appellant.*

LEWIS, Judge.

The standard for appellate review of orders of the Insurance Commissioner is set forth in G.S. 150B-51 and G.S. 58-9.6. While it is the task of this Court to determine whether the Commissioner's conclusions are supported by "material and substantial evidence in view of the entire record as submitted," G.S. 58-9.6(a)(5), it is not our function to substitute our judgment for that of the Commissioner when the evidence is conflicting. *Thompson v. Wake County Bd. of Educ.*, 292 N.C. 406, 410, 233 S.E.2d 538, 541 (1977). It is for the administrative agency "to determine the weight and sufficiency of the evidence and the credibility of the witnesses, to draw inferences from the facts, and to appraise conflicting and circumstantial evidence." *State ex rel. Comm'r of Ins. v. North Carolina Rate Bureau*, 300 N.C. 381, 406, 269 S.E.2d 547, 565, *reh'g denied*, 301 N.C. 107, 273 S.E.2d 300 (1980). However,

[i]f the court determines that the agency did not state specific reasons why it did not adopt a recommended decision, the court shall reverse the decision or remand the case to the agency to enter the specific reasons.

G.S. 150B-51(a).

STATE ex rel. COMR. OF INSURANCE v. N.C. RATE BUREAU

[96 N.C. App. 220 (1989)]

I

The Rate Bureau contends that the Insurance Commissioner did not comply with G.S. 58-124.19. This statute requires the Insurance Commissioner, in determining insurance rates, to consider certain factors. It must give due consideration to a reasonable margin for underwriting profit and contingencies as well as to dividends. The Rate Bureau contends that the Commissioner erred in (A) relying on the Commission's expert witness, who failed to recognize that a reasonable margin for deviations and dividends must be calculated into the underwriting profit provision, (B) arriving at the figure for underwriting profit by using surplus rather than net worth as a base figure, (C) using an arbitrary "target" of 13% to calculate the provision for underwriting profit, and (D) being unduly influenced by the fact that South Carolina and Virginia have made negative provisions for underwriting profit and not taking into account the differences between these markets and the North Carolina market.

(A)

The Rate Bureau contends that the Commissioner relied on testimony which failed to recognize that the profit contingencies of rate deviations and dividends are factors to be considered in determining the underwriting profit provision. Upon cross-examination, Mr. Wilson appears to suggest that such profit contingencies are external to the factors to be considered in calculating the underwriting profit provision. The record indicates that the Insurance Commissioner's chief witness, John Wilson, failed to recognize that the "profit contingencies" of rate deviations and dividends are factors to be considered in determining the rate. Wilson recommended a figure of − 4.3% for underwriting profits. The Commissioner ordered a − 2.5% provision for underwriting profit. The Commissioner's figure was closer to Wilson's than to the recommendation of any other expert witness, and the record suggests the Commissioner relied on Wilson's testimony in arriving at the ordered − 2.5% provision for underwriting profit. To the extent that the Commissioner relied on Mr. Wilson's calculation, he has perpetuated Wilson's error of failing to take rate deviation and dividend "contingencies" into account and failed to comply with the explicit statutory requirements of G.S. 58-124.19. The Commissioner does not state in his order the factors which guided his derivation of − 2.5% for underwriting profit. We vacate the ordered − 2.5% provision

for underwriting profit and remand the issue to the Commissioner to state the reasons for and explain his calculation of this figure.

### (B)

The Commissioner's chief witness calculated a target of 13% return based on net worth. The Rate Bureau contends the witness then mistakenly applied this figure to surplus rather than net worth, resulting in an unduly small provision for underwriting profit. Net worth is greater than surplus because surplus excludes certain "non-admitted assets." The record shows that the Rate Bureau and the Commissioner have different definitions of the technical usage of "surplus" in the insurance industry. Neither the applicable statutes nor the case law compel the Commissioner to consider overall net worth as the basis upon which to apply the recommended return. However, the Commissioner's derived figure for underwriting profit would not be based on "substantial evidence," G.S. 150B-51b(5), if it relied on mathematically inconsistent testimony. The Commissioner's order does not provide sufficient explanation for us to determine to what extent he relied on the 13% rate of return recommended by Wilson in deriving his final figure for underwriting profit. On remand, the Commissioner should explain the steps by which he arrived at the $-2.5\%$ provision for underwriting profit. G.S. 15B-51(a). If the Commissioner did rely on Wilson's misapplication of the target return figure, the calculations should be revised accordingly. The order should indicate whether he is applying the 13% return to surplus or net worth.

### (C)

The Rate Bureau contends that the Commissioner's selection of a 13% target return is "arbitrary or capricious" in violation of G.S. 58-9.6b(6). The Bureau contends that each of the three methods Wilson used to arrive at the 13% target—a market to book ratio analysis, a discounted cash flow analysis, and a comparable earnings analysis—is either flawed or misapplied. Although the extent to which the Commissioner relied on Wilson's methods of analysis is unclear, we do not find bias or error in these methods. As we do not find error in the Commissioner's judgment we cannot replace our judgment for his. *Thompson v. Wake County Bd. of Educ.*, 292 N.C. at 410, 233 S.E.2d at 541. The Commissioner's reliance on these methods of analysis of the profit to which the insurance companies are entitled lies entirely within his discretion. *State ex rel. Comm'r of Ins. v. North Carolina Rate Bureau,*

STATE EX REL. COMR. OF INSURANCE v. N.C. RATE BUREAU

[96 N.C. App. 220 (1989)]

300 N.C. 381, 407, 269 S.E.2d 547, 565-66, *reh'g denied*, 301 N.C. 107, 273 S.E.2d 300 (1980).

(D)

The Rate Bureau also contends that the Commissioner erred in concluding that investment income on unearned premium loss and loss expense reserves was too large to justify the Rate Bureau's recommended 2.5% provision for underwriting profit. The Rate Bureau contends that the Commissioner (i) did not take into account the volatility of those reserves and (ii) relied on the fact that Virginia and South Carolina apply negative underwriting provisions without taking into account the differences between those markets and the North Carolina market. G.S. 58-124.19(2) requires the Commissioner to take into account unearned premium, loss and loss expense reserve funds and to estimate these factors based on North Carolina data when available. We do not believe that the Commissioner must, in addition, take into account the volatility of the market. This consideration lies entirely within the discretion of the Commissioner. *Id.* Furthermore, we conclude that there is no indication in the Commissioner's order that he relied on market data from Virginia or South Carolina in arriving at the negative provisions for underwriting profit. The finding that South Carolina and Virginia implement negative provisions is superfluous and not prejudicial.

II

The Rate Bureau also contests the Commissioner's findings that the recommended provisions for production costs and general expenses should be reduced from the filed 22.5% to 19.5%. The Rate Bureau contends (i) that the Commissioner's rejection of data exclusively from stock companies does not justify his reduction of the recommended figure for this provision, (ii) that the Commissioner relied on Mr. Schwartz's use of countrywide premium discount data when North Carolina data was available.

The Commissioner concluded that Schwartz's use of data exclusively for stock companies was inappropriate and then reduced the Rate Bureau's 22.5% recommended provision for production costs and general expenses to 19.5%. The Rate Bureau contends that the Commissioner's objection to the Schwartz data does not justify the reduction. The burden of proof in a Rate Bureau filing lies with the Rate Bureau. *State ex rel. Comm'r of Ins. v. North*

PYA/MONARCH, INC. v. RAY LACKEY ENTERPRISES

[96 N.C. App. 225 (1989)]

*Carolina Rate Bureau,* 300 N.C. 485, 489, 269 S.E.2d 602, 605 (1980). If the Commissioner determines the Rate Bureau has not carried that burden and there is no "substantial and material evidence" to the contrary, we do not substitute our judgment for that of the Commissioner. *State ex rel. Comm'r of Ins. v. North Carolina Rate Bureau,* 300 N.C. at 406, 269 S.E.2d at 565. The record indicates that the actual production costs and general expenses incurred by North Carolina insurance companies during the last three years is in fact closer to the provision ordered by the Commissioner than to the requested filing of the Rate Bureau. However, G.S. 58-124.19(2) does explicitly state that North Carolina data must be used where available. To the extent that the Commissioner relied on Mr. Schwartz's use of countrywide premium discount data where North Carolina data was available, his decision is not in compliance with the statute. Therefore, we remand this issue to the Commissioner to clarify the evidence upon which he relied to reach a 19.5% provision for production costs and general expenses. To the extent that the ordered provision was based on countrywide data where North Carolina data was available, it must be reconsidered.

Affirmed in part, vacated in part, and remanded.

Judges EAGLES and PARKER concur.