N.C. DEPARTMENT OF CORRECTION, Petitioner v. DONALD P. McNEELY, Respondent

No. COA98-1131

(Filed 16 November 1999)

1. **Administrative Law— whole record test—not explicitly stated**

   The trial court used the appropriate standard of review, the whole record test, when reviewing the dismissal of a correctional officer where the court's order did not specify the standard of review employed, but stated that the Personnel Commission's conclusion was not supported by substantial evidence in the record and that there was no evidence that any other officer assigned to that duty violated the applicable rule.

2. **Public Officers and Employees— correctional officer— dismissal—personal conduct**

   The Department of Correction met its burden of showing just cause for terminating respondent-correctional officer's employment, and the Personnel Commission's conclusion to the contrary was error, where respondent left his post without authorization and failed to remain alert while on duty. This conduct constituted unacceptable personal conduct for which an employee may be dismissed without prior warning. While there was evidence that other correctional officers read books and smoked while on duty, there was no evidence that any other officer assigned to the control room left his duty post without authorization and lost visual contact with dorm officers for more than three minutes in violation of published work rules. Respondent's willful violation of the written work rule was a serious breach of security which jeopardized the custody and security of inmates and the safety of his co-workers.

Appeal by respondent from judgment entered 29 June 1998 by Judge Henry V. Barnette, Jr. in Wake County Superior Court. Heard in the Court of Appeals 9 June 1999.

*Attorney General Michael F. Easley, by Associate Attorney General Buren R. Shields, III, for the State.*

*C. Gary Triggs, P.A., by C. Gary Triggs, for respondent appellant.*

TIMMONS-GOODSON, Judge.

Donald P. McNeely (hereinafter, "respondent"), a correctional officer with the North Carolina Department of Correction (hereinafter, "DOC"), was dismissed for misconduct effective 22 June 1994. The stated grounds for the dismissal were: "(1) leaving [his] post without authorization and (2) failure to remain alert on duty." From the Superior Court's Memorandum of Decision instructing the Personnel Commission (hereinafter, "the Commission") to enter an order upholding the dismissal, respondent appeals.

The evidence tends to show that on 5 June 1994, respondent was assigned as Control Officer from 10:00 p.m. to midnight at McDowell County Correctional Center. The Control Officer is primarily "responsible for maintaining the safety and security of the inmates and staff in the dormitory area."

In pertinent part, the published work rules for the Control Officer post state the following:

(1) No officer is to leave this post until properly relieved. The Officers shall be alert at all times and shall not engage in any activity which will distract their attention from their responsibilities.

(2) The Control Officer will maintain visual contact with the Dormitory Patrol Officer. If the Control Officer does not see the Dormitory Officer for 3 minutes, then call the Officer-In-Charge (OIC).

Respondent was familiar with the aforementioned duties of the Control Officer, having repeatedly served in that capacity while employed with the DOC.

At approximately 10:55 p.m., while conducting an inspection of the officers on duty, Sergeant Elkins, the shift supervisor, observed respondent away from his assigned work post, the control room, without authorization. Respondent was standing in a corridor adjacent to the control room, smoking a cigarette and reading a novel. From this position, respondent could observe only two-thirds of the dormitory area, and as a result of leaving his post, respondent lost sight of the two Dorm Officers, Tim Frady and Steven Edwards, for a period of six to ten minutes. The two officers, armed only with cans of mace, were walking among the prisoners. Both officers testified

that they had a heightened concern for their own safety due to respondent's actions.

This incident was not respondent's first warning concerning his conduct at work. Respondent received three prior warnings about his performance, two of which were specifically related to his failure to remain vigilant while assigned to the dormitory area. On 30 July 1993, respondent was issued a final written warning for failing to stay alert in the dormitory when he was observed sitting down with his head resting on his chest and his eyes closed. Thereafter, on 23 September 1993, respondent was again issued a written warning for failing to perform assigned duties in an acceptable manner by watching television in lieu of making assigned rounds in the dormitory. Both of these warnings were instigated by Sergeant Elkins.

On 22 June 1994, DOC dismissed respondent from his position as a correctional officer for "unacceptable personal conduct" occurring on 5 June 1994. Respondent filed a petition for wrongful termination, and a hearing was held before an Administrative Law Judge (hereinafter, "ALJ") on 10 October 1995. On 12 February 1996, the ALJ found that respondent's misconduct met the regulatory definition of "unsatisfactory job performance" rather than "unacceptable personal conduct." Therefore, the ALJ concluded that respondent was not dismissed for just cause and recommended that the dismissal be reversed and respondent be reinstated with a final written warning for "unsatisfactory job performance" or, alternatively, with a five percent pay reduction. The Commission considered the ALJ's recommendation on 6 June 1996 and entered an order upholding the decision with slight modifications. The Commission ordered respondent's reinstatement, after concluding that respondent's misconduct failed to meet the definition of "unacceptable personal conduct." On 30 August 1996, the DOC petitioned for judicial review of the Commission's order on the grounds that the legal and factual bases of its decision, as stated in Conclusion of Law Number 3, were arbitrary and capricious, unsupported by substantial evidence, and erroneous as a matter of law. In an order dated 29 June 1998, the trial court reversed the Commission and upheld the DOC's decision to dismiss respondent. Respondent now appeals the ruling.

---

By his sole assignment of error, respondent argues that the trial court erred in reversing the Commission's decision. Specifically, respondent contends that the trial court erroneously determined that the Commission's Conclusion of Law Number 3 was not supported by substantial evidence in the record. We must disagree.

Judicial review of administrative agency decisions is governed by the Administrative Procedure Act, North Carolina General Statutes sections 150B-1 to 150B-52. N.C. Gen. Stat. §§ 150B-1 -150B-52 (1995); *Eury v. North Carolina Employment Security Comm.*, 115 N.C. App. 590, 596, 446 S.E.2d 383, 387, *disc. review denied*, 338 N.C. 309, 451 S.E.2d 635 (1994). Section 150B-51(b) states the following:

> [T]he court reviewing a final decision may affirm the decision of the agency or remand the case for further proceedings. It may also reverse or modify the agency's decision if the substantial rights of the petitioner may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error of law;
>
> (5) Unsupported by substantial evidence . . . in view of the entire record as submitted; or
>
> (6) Arbitrary or capricious.

N.C.G.S. § 150B-51(b). Although section 150B-51(b) lists the grounds upon which the superior court may reverse or modify a final agency decision, "the proper manner of review depends upon the particular issues presented on appeal." *Amanini v. N.C. Dept. of Human Resources*, 114 N.C. App. 668, 674, 443 S.E.2d 114, 118 (1994).

> If [petitioner] argues the agency's decision was based on an error of law, then "de novo" review is required. If, however, [petitioner] questions (1) whether the agency's decision was supported by the evidence or (2) whether the decision was arbitrary or capricious, then the reviewing court must apply the "whole record" test.

*Id.* (quoting *In re Appeal by McCrary*, 112 N.C. App. 161, 165, 435 S.E.2d 359, 363 (1993). " 'De novo' review requires a reviewing court to consider a question anew, as if not considered or decided by the agency." *Amanini* at 674, 443 S.E.2d at 118. Under the "whole record" test, a reviewing court must consider all competent evidence, including that which fairly detracts from the Commission's findings, con-

clusions, or ultimate decision, to determine whether the decision has a rational basis in the evidence. *Beauchesne v. University of N.C. at Chapel Hill*, 125 N.C. App. 457, 465, 481 S.E.2d 685, 691 (1997).

**[1]** Under section 150B-52 of the General Statutes, this Court's review of a trial court's order "is the same as in any other civil case;" thus, we must examine the trial court's order for error of law. *In re Appeal by McCrary*, 112 N.C. App. at 165, 435 S.E.2d at 363 (citation omitted); N.C.G.S. § 150B-52. The reviewing process of a superior court order concerning an agency decision is two-fold. We must (1) determine whether the trial court utilized the appropriate scope of review and, if appropriate, (2) decide whether the court did so properly. *Eury*, 115 N.C. App. at 597, 446 S.E.2d at 388. Because the order in the instant case does not specify which standard of review the trial court employed, we will look to how the alleged error was characterized by the parties on appeal to the superior court. *See In re Appeal of Willis*, 129 N.C. App. 499, 500 S.E.2d 723 (1998).

In its petition for judicial review, DOC argued that the Commission's Conclusion of Law Number 3 was "arbitrary and capricious, unsupported by substantial evidence in view of the entire record, and erroneous as a matter of law." Thus, the trial court should have reviewed the matter under the "whole record" test. *Amanini*, 114 N.C. App. 668, 443 S.E.2d 114. In reversing the Commission's decision, the trial court's order states that the "Commission's modified conclusion was not supported by substantial evidence in the record." The order further provides that "[t]here is no evidence that any other correctional officer assigned to control room duty violated this rule." In view of this language, we are satisfied that the trial court used the appropriate standard of review—the "whole record" test—in reaching its decision. We now must determine whether the trial court properly applied the "whole record" test.

**[2]** As previously stated, under the "whole record" test, the reviewing court must examine "all competent evidence (the 'whole record') in order to determine whether the agency decision is supported by 'substantial evidence.' " *ACT-UP Triangle v. Commission for Health Services*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997) (quoting *Amanini*, 114 N.C. App. at 674, 443 S.E.2d at 118). This test, however, is not "a tool of judicial intrusion," *North Carolina Dept. of Correction v. Gibson*, 58 N.C. App. 241, 257, 293 S.E.2d 664, 674 (1982), *rev'd on other grounds*, 308 N.C. 131, 301 S.E.2d 78 (1983) (quoting *In re Rogers*, 297 N.C. 48, 65, 253 S.E.2d 912, 922 (1979)), and

thus, does not permit the court "to replace the [agency's] judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo*," *Thompson v. Board of Education*, 292 N.C. 406, 410, 233 S.E.2d 538, 541 (1977). Instead, the "whole record" test "merely gives a reviewing court the capability to determine whether an administrative decision has a rational basis in the evidence." *Gibson*, 58 N.C. App. at 257, 293 S.E.2d at 674 (quoting *In re Rogers*, 297 N.C. at 65, 253 S.E.2d at 922). Therefore, if the Commission's findings are supported by substantial evidence—that amount of evidence that a reasonable mind would accept as adequate to support a decision, the reviewing court must uphold the Commission's decision. *ACT-UP Triangle*, 345 N.C. at 707, 483 S.E.2d at 393 (quoting *State ex rel. Comm'r of Ins. v. N.C. Fire Ins. Rating Bureau*, 292 N.C. 70, 80, 231 S.E.2d 882, 888 (1977)); N.C.G.S. § 150B-51(b).

After a thorough review of the record, we conclude that the trial court was correct in determining that the record lacked substantial evidence to support the Commission's Conclusion of Law Number 3, which reads as follows:

[Petitioner (DOC)] has not met its burden of showing just cause for terminating [respondent's] employment. While [respondent] acted inappropriately in leaving his post to smoke and read a novel for a period of 6-10 minutes, because this type of conduct was routinely engaged in by correctional staff at this unit without any disciplinary action being taken, this constituted, at best, a violation of the standard operating procedures of the unit and unsatisfactory job performance. While a professional Correctional Officer should know better, no detriment to state service was shown by the [Petitioner]. [Respondent] remained in full control of the keys to the dorms at all times.

Section 126-35 of the General Statutes provides that "[n]o career State employee subject to the State Personnel Act shall be discharged, suspended, or demoted for disciplinary reasons, except for just cause." N.C. Gen. Stat. § 126-35 (1995). The State Personnel Manual divides "just cause" into two categories: (1) unsatisfactory job performance and (2) personal conduct detrimental to State service. "Unsatisfactory job performance" is defined as "the failure to satisfactorily perform job requirements as specified in the job description, work plan, or as directed by management of the work unit or agency." "Unacceptable personal conduct" refers to:

(1) conduct for which no reasonable person should expect to receive prior warnings;

(2) job-related conduct which constitutes a violation of state or federal law;

(3) conviction of a felony or an offense involving moral turpitude;

(4) the willful violation of known or written work rules; or

(5) conduct unbecoming a state employee that is detrimental to state service.

According to the provisions of the DOC Personnel Manual, examples of "unsatisfactory job performance" include poor performance of duties, misuse of state property, absence without approved leave, failure to report for duty at an assigned time or place, and failure to follow established safety policies and procedures. Among the examples of "unacceptable personal conduct" listed in the DOC Manual are willful acts that would endanger the lives and property of others, leaving an assigned post without specific authorization from a superior, failure to remain alert while on duty (threatening the security and safety of the State, department, citizens, employees, inmates, probationers, or parolees), engaging in activity which seriously jeopardizes the safety of fellow employees or inmates, and failure to follow established safety policies and procedures which results or could result in the endangerment of life and/or property. Before an employee may be dismissed for "unsatisfactory job performance," he must receive at least three prior written warnings. However, an employee may be dismissed for "unacceptable personal conduct" without any prior warning.

Based on the State Personnel Manual, the DOC Personnel Manual and the published work rules for the Control Officer post at McDowell County Correctional Center, respondent's behavior in leaving his post without authorization and failing to remain alert while on duty falls squarely within the category of "unacceptable personal conduct." The evidence shows that at approximately 10:55 p.m., respondent left his assigned post as Control Officer without authorization from his superiors. Officers Elkins, Frady and Edwards testified that they witnessed respondent reading a novel and smoking a cigarette in the corridor outside the control room for approximately six to ten minutes. The Commission stated that "this type of conduct was routinely engaged in by correctional staff at this unit without any disci-

plinary action being taken," and thus, the conduct constituted "unsatisfactory job performance" rather than "unacceptable personal conduct." We cannot agree with the Commission's conclusion.

While there is evidence in the record that other correctional officers read books and smoked while on duty, we find no evidence that any other correctional officer assigned to the control room left his duty post without authorization and lost visual contact with the Dorm Officers for more than three minutes. The published work rules for the Control Officer post at McDowell County Correctional Center clearly provide that "[n]o officer is to leave [the control room] post until properly relieved" and that "[t]he officers shall be alert at all times and shall not be engaged in any activity that will distract their attention from their responsibilities." Respondent's willful violation of a written work rule was a serious breach of security which jeopardized the custody and security of the inmates and the safety of his coworkers. Therefore, the DOC has met its burden of showing just cause for terminating respondent's employment, and the Commission's conclusion to the contrary was error.

For the foregoing reasons, the trial court's Memorandum of Decision reversing the Commission's order and instructing the Commission to enter an order upholding respondent's dismissal is affirmed.

AFFIRMED.

Judges JOHN and EDMUNDS concur.