DONNA PITTMAN, Petitioner v. NORTH CAROLINA DEPARTMENT OF HEALTH
AND HUMAN SERVICES, Respondent

No. COA01-1285

(Filed 31 December 2002)

## 1. Administrative Law—standard of review—constitutional question—de novo

The trial court correctly applied the de novo standard of review to the constitutional sufficiency of a dismissal letter received by a health care technician employed by respondent.

## 2. Public Officers and Employees—state employee—dismissal letter—not unconstitutionally vague

A letter dismissing a state employee was not unconstitutionally vague where it comprised more than two pages, gave petitioner sufficient reasons for her dismissal to enable preparation for a contested case hearing, and advised petitioner of her appeal rights.

## 3. Administrative Law—state employee dismissal letter—alleged inaccuracies—no constitutional deficiency

A letter dismissing a state employee was not constitutionally deficient where the employee alleged that it contained inaccuracies and falsehoods. The agency decides the credibility of witnesses and conflicts in the evidence.

## 4. Public Officers and Employees—state employee—dismissal letter—received at time of dismissal

A letter dismissing a state employee was neither constitutionally deficient nor in violation of statutory requirements where petitioner received it at the same time she was dismissed. The purpose of the statute is to notify employees of the reasons for disciplinary actions and to advise them of their rights of appeal; in this case, petitioner had a pre-termination conference before receiving the letter and a post-termination conference after receiving it.

PITTMAN v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[155 N.C. App. 268 (2002)]

**5. Administrative Law—standard of review—not stated—no remand**

Remand of the dismissal of a state employee was unnecessary where the trial court did not state that it was applying the whole record standard of review to the question of whether there was substantial evidence to support the State Personnel Commission's decision, but the court did state that its order was based upon a review of the papers, pleadings, briefs, and other matters filed and submitted in the action.

**6. Administrative Law—whole record test—conflicting evidence**

There was substantial evidence to support the State Personnel Commission's findings that a heath care technician had committed the acts for which she was terminated. The whole record test does not allow the reviewing court to replace the agency's judgment between two reasonably conflicting views.

**7. Public Officers and Employees—dismissal of state employee—violation of work rules—knowledge of rules**

There was sufficient evidence that a dismissed state health care technician violated known or written work rules where she pointed to a change in respondent's feeding policy, but there is no reasonable possibility that she would be unaware that acts such as throwing out food without offering it to residents violated the rules.

**8. Public Officers and Employees—termination of state employee—sufficiency of evidence**

There was substantial evidence to support the State Personnel Commission's conclusion that there was just cause to terminate a health care technician at a long-term care nursing facility for unacceptable personal conduct where there were multiple instances of petitioner throwing out nourishments intended for residents in her care. This was a willful failure to carry out one of the basic functions of her position rather than a technical violation of an administrative regulation, and her intentional indifference to the effect on the residents' health and quality of life constitutes conduct for which no reasonable person should expect to receive a prior warning.

Judge WALKER dissenting.

Appeal by petitioner from order entered 13 July 2001 by Judge Knox V. Jenkins, Jr. in Johnston County Superior Court. Heard in the Court of Appeals 10 June 2002.

*Mast, Schulz, Mast, Mills & Stem, P.A., by David F. Mills, for petitioner-appellant.*

*Attorney General Roy Cooper, by Assistant Attorney General Thomas M. Woodward, for the State.*

BIGGS, Judge.

Petitioner (Donna Pittman) appeals from an order of the trial court affirming the State Personnel Commission's decision to uphold her termination by respondent, North Carolina Department of Health and Human Services (hereinafter referred to as NCDHHS). We affirm the trial court.

Petitioner was employed by the North Carolina Special Care Center (NCSCC) from 1994 to 1998, as a Health Care Technician (HCT). The NCSCC, operated by respondent, is a 208 bed long-term care nursing facility for residents suffering from mental illness, Alzheimer's disease, senile dementia, and other psychological disorders, as well as unrelated medical or physical problems. NCSCC accepts patients who cannot be cared for elsewhere; their residents typically are unable to bathe, feed, or dress themselves, and cannot make decisions on their own. As an HCT, petitioner was responsible for the feeding, bathing, and general care of these residents.

In September, 1998, a new HCT expressed concerns about "short-cuts" taken by some of the other HCT's on the sixth floor, where petitioner worked. Respondent's supervisory staff observed that the sixth floor distribution of meals took far less time than on other halls, and undertook an investigation. They interviewed HCTs, observed the care and feeding of residents on the sixth floor, and inspected the charts and records kept for sixth floor residents. During this investigation, several HCTs reported having seen petitioner discard the residents' evening snacks without offering them to the residents, while other reports indicated that petitioner had put a resident to bed without completing his bathing and shaving; had given another resident both his meal and also the meal intended for his roommate; and had allowed *difficult* residents to eat only sweets for supper. In early November, 1998, the assistant director of nursing met with petitioner to discuss respondent's concerns. Petitioner denied

throwing out residents' food, distributing meals improperly, or failing to bathe patients in her care. She offered explanations for some of the alleged incidents, but the residents' charts were inconsistent with petitioner's explanations.

On 4 December 1998, NCSCC held a pre-dismissal conference with petitioner, and discussed with her the allegations of the other HCTs. Petitioner admitted substituting foods on occasion, but denied ever throwing out food or drink, except on rare occasions when an item had spoiled. She was dismissed the same day.

Petitioner appealed her dismissal, and was granted a hearing before a NCDHHS officer in February, 1999. The hearing officer concurred with the decision to terminate her. Petitioner was then granted a contested case hearing, held before an Administrative Law Judge (ALJ) on 10 August 1999. Although the record suggests that the ALJ filed a decision favorable to petitioner on 15 August 1999, the decision was not made a part of the record. Respondent appealed, and the matter was heard by the State Personnel Commission (SPC) on 27 April 1999. The SPC issued a decision on 16 May 2000, reversing the ALJ's recommendation, and reinstating petitioner's dismissal. Petitioner sought judicial review in superior court, and on 13 July 2001, the court issued an order affirming the SPC's decision. Petitioner appeals from this order.

## Standard of Review

Petitioner's appeal from the final decision of the SPC to the trial court is governed by N.C.G.S. § 150B-51(b) (2001). The statute authorizes the court to reverse or modify the agency's decision, or adopt the administrative law judge's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence . . . in view of the entire record as submitted; or

(6) Arbitrary, capricious, or an abuse of discretion.

On appeal, this Court must determine (1) whether the trial court applied the appropriate standard of review and, if so, (2) whether the court did so properly. *Amanini v. N.C. Dep't of Human Resources*, 114 N.C. App. 668, 675, 443 S.E.2d 114, 118-19 (1994). The issues presented dictate the appropriate standard of review to be applied. "Where the petitioner alleges that the agency decision was either unsupported by the evidence, or arbitrary and capricious, the superior court applies the whole record test to determine whether the agency decision was supported by substantial evidence contained in the entire record. Where the petitioner alleges that the agency decision was based on an error of law, the reviewing court must examine the record *de novo*, as though the issue had not yet been considered by the agency." *Id.*

In applying the whole record test, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Comr. of Insurance v. Rating Bureau*, 292 N.C. 70, 80, 231 S.E.2d 882, 888 (1977). "If substantial evidence supports an agency's decision after the entire record has been reviewed, the decision must be upheld." *Blalock v. N.C. Dep't of Health and Human Servs.*, 143 N.C. App. 470, 473-74, 546 S.E.2d 177, 181 (2001).

I.

**[1]** Petitioner argues first that the trial court erred by concluding that the dismissal letter of 8 December 1998 (1) sufficiently provided petitioner with notice of the reasons for her dismissal, and (2) did not violate either petitioner's right to due process guaranteed by the U.S. Constitution, or the requirements of N.C.G.S. § 126-35. We disagree with both contentions.

Petitioner contends that the dismissal letter she received, informing her of the NCSCC's decision to terminate petitioner for "violation of our Abuse, Neglect, and Exploitation Policy," was constitutionally deficient. The trial court applied *de novo* review to this question, which we conclude is the correct standard of review. *Owen v. UNC-G Physical Plant*, 121 N.C. App. 682, 686, 468 S.E.2d 813, 816 (1996) ("When reviewing an agency decision for constitutional or procedural errors, this Court applies de novo review.").

**[2]** We next consider whether the trial court correctly applied *de novo* review to the issues concerning the dismissal letter. Petitioner is a career State employee. "The North Carolina General Assembly

created, by enactment of the State Personnel Act, a constitutionally protected property interest in the continued employment of career State employees." *Peace v. Employment Sec. Com'n of North Carolina*, 349 N.C. 315, 321, 507 S.E.2d 272, 277 (1998). Petitioner's right to due process of law, "guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, § § 19, 23, and 27 of the North Carolina Constitution[,]" *State v. Parker*, 350 N.C. 411, 516 S.E.2d 106 (1999), applies to employment termination procedures. *Leiphart v. North Carolina School of the Arts*, 80 N.C. App. 339, 348-49, 342 S.E.2d 914, 921, *cert. denied*, 349 S.E.2d 862, 318 N.C. 507 (1986).

Although "the exact nature and mechanism of the required procedure will vary based upon the unique circumstances surrounding the controversy," "[t]he fundamental premise of procedural due process protection is notice and the opportunity to be heard." *Peace v. Employment Sec. Com'n of North Carolina*, 349 N.C. 315, 322, 507 S.E.2d 272, 278 (1998) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546, 547-48, 84 L. Ed. 2d 494, 506-07 (1985)). An employee's property interest in his or her employment "is sufficiently protected by 'a pretermination opportunity to respond, coupled with post-termination administrative procedures[,]' and 'the minimal protection of fundamental fairness established by federal due process' " is satisfied "if the employee receives 'oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.' " *Owen v. UNC-G Physical Plant*, 121 N.C. App. 682, 686, 468 S.E.2d 813, 816 (1996) (quoting *Loudermill, id.*).

The dismissal letter which petitioner received is just one feature of a statutory scheme, outlined in N.C.G.S. § Chapter 126, which provides an employee with notice and opportunity to be heard prior to termination, as well as the opportunity to appeal a termination decision. The North Carolina Supreme Court previously has held that the statutory procedure "fully comports with the constitutional procedural due process requirements mandated by the Fourteenth Amendment, and no additional safeguards are needed to avoid erroneous deprivation." *Peace* at 327, 507 S.E.2d at 280.

Nonetheless, petitioner contends that this letter is "unconstitutionally vague" because it "contains no details as to time, place, events, or people involved." We disagree. The letter included the following:

. . . [HCTs] have witnessed you pouring nourishments out prior to offering them to the Residents. Irene Moore, Julian Mack and Geishala Norfleet . . . have seen you pour [bedtime] nourishments down the sink in the kitchen and the Resident's room. Ms. Norfleet . . . [saw] you open nourishments and pour half of it out and then throw the remainder in the trash without offering them to the Resident. Ms. Moore has seen you pour nourishments down the kitchen sink and down sinks in the Resident's rooms prior to offering them[, and] indicated that . . . the self-feeders were the [only] ones that received the snack. Julian Mack has seen you pour nourishments down the sink without offering them to the Resident. . . . Mr. Mack . . . [saw] you feeding only dessert to some [Residents] that are "difficult" to feed. Ms. Moore observed you on one occasion feeding Resident # 11-58-87 a supper tray that belonged to Resident # 95-66-94. Ms. Moore has also observed Resident # 14-60-63 returned to bed by 3:30 p.m. - 3:35 p.m. in his gown with an unshaven face on his shower day when you were assigned to him.

The letter, comprising more than two pages, informs petitioner that the primary "act or omission" that led to her termination was petitioner's failure to provide residents the food and drink ordered for them, by (1) pouring bedtime snacks down the drain, rather than distributing them to residents, (2) switching dinner plates between residents with specific dietary needs, (3) feeding certain residents only dessert, and (4) substituting snacks without authorization. The dismissal letter specified individual co-workers who had observed this behavior, and identified the residents involved. The letter informed petitioner that her record keeping was inaccurate; that she had been observed to neglect hygiene care of at least one resident, identified in the letter; and listed specific NCSCC nursing and training classes petitioner had attended. The letter also summarized petitioner's prior responses to respondent's concerns, consisting of denials, claims that she was unaware of policies, and an assertion that witnesses to her actions were motivated by racial bias. We conclude that the letter sufficiently informed petitioner of the reasons for her dismissal to enable her to prepare for the contested case hearing. The letter also advised petitioner of her appeal rights, steering her to the statutory procedures that guard against erroneous termination of an employee:

The above practices can no longer be tolerated. As a permanent employee, you have the right to appeal this decision. Such an

appeal must be submitted to Personnel, in writing on the enclosed Department of Human Resources form # 0660 within (15) calendar days of your receipt ·of this letter. A copy of the DHR directive #33 is also enclosed. Should you have any questions concerning appeal rights, please contact Ms. Shirley Howard, Human Resources Manager at [phone number].

It would appear that petitioner understood her right to appeal the decision; she requested and received a contested case hearing, a hearing before the SPC, a superior court review, and the present appeal.

[3] Petitioner also argues that the dismissal letter was constitutionally deficient because it allegedly contained inaccuracies and falsehoods. However, where "petitioner asserts that testimony by the agency's witnesses was inconsistent, [and that] the agency's witnesses were biased and delayed reporting the alleged misconduct, . . . it is for the agency to decide the credibility of witnesses and conflicts in the evidence." *Blalock v. Department of Health and Human Services*, 143 N.C. App. 470, 546 S.E.2d 177, 181-82 (2001).

[4] Finally, petitioner argues that the dismissal letter violated N.C.G.S. § 126-35, because she received it at the same time that she was dismissed. Under the statute, "the employee shall, before the [disciplinary] action is taken, be furnished with a statement in writing setting forth in numerical order the specific acts or omissions that are the reasons for the disciplinary action and the employee's appeal rights." "The purpose of the statute is to notify the employee of the reasons for the disciplinary action and to advise him of his rights to appeal the disciplinary action." *Employment Sec. Commission of North Carolina v. Wells*, 50 N.C. App. 389, 392, 274 S.E.2d 256, 258 (1981). This is intended to "prevent an employer from summarily discharging an employee and then searching for justifiable reasons for the dismissal." *Leiphart v. North Carolina School of the Arts*, 80 N.C. App. 339, 351, 342 S.E.2d 914, 922-23 (1986). *See Kea v. Department of Health and Human Services*, 153 N.C. App. 595, 604, 570 S.E.2d 919, 925, (2002) ("The fact that [the] notice was given simultaneously with the disciplinary action in this case is not a violation of N.C. G. S. § 126-35.").

In the instant case, petitioner had both a pretermination conference before receiving the dismissal letter, and a post-termination contested case hearing after receipt of the letter. We conclude that the dismissal letter was neither constitutionally deficient, nor in violation

of N.C.G.S. § 126-35, because of being given to petitioner simultaneously with her dismissal. Accordingly, this assignment of error is overruled.

II.

Petitioner argues next that the trial court erred in affirming the SPC's determination that there was just cause to terminate petitioner's employment for unacceptable personal conduct. She contends that: (1) the Commission's findings, that petitioner committed the acts for which she was terminated, were not supported by substantial evidence; (2) there was insufficient evidence that petitioner violated known or written work rules, and; (3) the acts for which petitioner was terminated, even if proven, constituted unsatisfactory job performance rather than unacceptable personal conduct. We disagree.

Termination of career State employees is governed by N.C.G.S. § 126-35 (2001), which provides in part that a career State employee may not be "discharged, suspended, or demoted for disciplinary reasons, except for just cause." N.C.G.S. § 126- 35(a). The statute also provides that "[t]he State Personnel Commission may adopt, subject to approval of the Governor, rules that define just cause." Accordingly, SPC has drafted a regulation stating that:

There are two bases for the discipline or dismissal of employees under the statutory standard of 'just cause' as set out in G.S. 126-35. These two bases are:

(1) Discipline or dismissal imposed on the basis of unsatisfactory job performance, including grossly inefficient job performance.

(2) Discipline or dismissal imposed on the basis of unacceptable personal conduct.

25 NCAC 1J.0604 JUST CAUSE FOR DISCIPLINARY ACTION. In the present case, petitioner was dismissed for 'unacceptable personal conduct,' defined in the N.C. Administrative Code in relevant part as follows:

(i) Unacceptable Personal Conduct is:

(1) conduct for which no reasonable person should expect to receive prior warning; or

. . . .

(4) the willful violation of known or written work rules[.]

25 NCAC 1J.0614(i)(1) and (4). "An employee challenging his or her termination for just cause has the burden of proving that the agency's decision was improper." *Peace v. Employment Sec. Comm'n of North Carolina*, 349 N.C. 315, 328, 507 S.E.2d 272, 281-82 (1998). *See also Best v. Department of Health and Human Services*, 149 N.C. App. 882, 563 S.E.2d 573 (2002) ("SPC properly required the petitioners to prove the absence of substantial evidence of just cause for their termination").

[5] A trial court's conclusion that just cause existed to dismiss petitioner is "an issue of law, which we review de novo." *Steeves v. Scotland County Bd. of Health*, 152 N.C. App. 400, 406, 567 S.E.2d 817, 821 (2002). Thus, in the case *sub judice*, the trial court properly concluded "the issue[] raised by the Petitioner, that . . . Respondent did not have just cause to dismiss her for improper personal conduct, . . . require[s] a *de novo* review by this Court." However, the SPC's findings supporting its conclusion must be based upon substantial evidence, *N.C. Dept. of Correction v. McNeely*, 135 N.C. App. 587, 521 S.E.2d 730 (1999), and petitioner's contention that the Commission's decision was not supported by sufficient evidence required the trial court to apply the "whole record" test. *Homoly v. North Carolina State Bd. of Dental Examiners*, 125 N.C. App. 127, 479 S.E.2d 215 (1997).

Although the trial court did not expressly state that it applied the whole record standard of review in the present case, it stated that its order was based upon "a review of the papers, pleadings and other matters filed in this action, and upon review of the briefs submitted by each party." Even assuming that the trial court failed to apply whole record review to the issue of whether substantial evidence supported the Commission's order, on the facts of this case "we conclude [that] remand in the case sub judice is unnecessary." *Sun Suites Holdings, LLC v. Board of Aldermen of Town of Garner*, 139 N.C. App. 269, 274, 533 S.E.2d 525, 528-29 (2000) (agency failed to delineate whether it applied *de novo* or whole record review to particular issue).

[6] In her assignments of error, petitioner alleged that the trial court's findings of fact numbers 5, 8, and 12-17 were not supported by substantial evidence. The challenged findings of fact essentially summarize witness testimony from the hearing and, we conclude, do so accurately. However, in her brief, petitioner argues more generally that the evidence was insufficient to allow the SPC

to conclude that she had committed the acts for which she was terminated. We disagree.

Petitioner was terminated for neglect of residents, in violation of respondent's 'Abuse, Neglect, and Exploitation' policy, and specifically for throwing out food instead of feeding it to the residents. The record evidence includes the following:

1. Testimony by HCT Moore, that she had personally observed petitioner feeding a clinically overweight resident both his supper and also that intended for his roommate, a clinically underweight resident; opening fresh nourishments and then pouring them out in the kitchen sink, without ever offering them to the residents; and discarding other evening nourishments in resident Allen's room, without offering them to the residents.

2. Testimony by HCT Mack, that he had heard petitioner 'pop open' fresh cans of the evening drink, and then saw her pouring them down the sink in resident Lindsey's room.

3. Testimony by nursing director Batts that respondent had interviewed petitioner's co-workers and reviewed patient charts, and other records during their investigation; that petitioner's statements to her supervisor were inconsistent with her deposition testimony; and that intentionally withholding nourishment from residents was considered 'neglect' by respondent.

4. Testimony by dietician Leake that for certain residents, it was medically important that they receive food as prescribed for them.

5. Testimony of assistant nursing director Register, that when the HCTs were interviewed, petitioner was the only HCT identified as discarding residents' food; that petitioner had admitted substituting food on occasion; and that petitioner had been counseled on previous occasions for inappropriate or suggestive behavior with residents, and for falsifying her time sheet.

Petitioner challenges the witnesses' testimony. She argues that the HCT witnesses were biased against her; that their testimony lacked details such as the exact date on which petitioner poured out food; that their observations were subject to innocent interpretations; and that the HCTs had an insufficient opportunity to make the observations to which they testified. However, the "whole record test does

not allow the reviewing court to replace the [agency's] judgment as between two reasonable conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo*." *Thompson v. Wake County Board of Education,* 292 N.C. 406, 410, 233 S.E.2d 538, 541 (1977). "Further, the court may not 'disturb an agency's assessment of the credibility of the witnesses and the weight and sufficiency' to be given the evidence." *Beauchesne v. University of North Carolina at Chapel Hill,* 125 N.C. App. 457, 465-66, 481 S.E.2d 685, 691 (1997) (quoting *Teague v. Western Carolina University,* 108 N.C. App. 689, 692, 424 S.E.2d 684, 686, *disc. review denied,* 333 N.C. 466, 427 S.E.2d 627 (1993)). We conclude that the testimony amply supported the SPC's findings that petitioner had committed the acts for which she was terminated. This assignment of error is overruled.

[7] We next consider petitioner's contention that there was insufficient evidence that she violated known or written work rules. This argument is meritless. Petitioner was dismissed for violation of respondent's policies on neglect of residents. The dismissal letter states that:

> According to our Residents Right[s] Policy # 12-10 (Abuse, Neglect and Exploitation) located in the Administrative Manual: The . . . neglect . . . of Residents will subject the employee to disciplinary action. Neglect is defined as the failure to provide care or services, necessary to maintain the mental health, physical health and well being of the Resident. Any committed or omitted act resulting in inadequate or improper care or treatment of a Resident.

Petitioner belabors the issue of whether she was notified when respondent's feeding policy changed from requiring HCTs to offer residents nourishments two times versus three times before discarding the food as refused by the resident. However, petitioner was not fired for technical violation of respondent's policies, such as offering residents food twice instead of three times. Rather, witnesses testified that they personally observed petitioner discarding fresh snacks or nourishments by throwing them out or pouring them down the sink, without ever offering them to the residents. Petitioner does not argue, and we discern no reasonable possibility, that she could be unaware that simply throwing out food was a violation of known work rules. This assignment of error is overruled.

[8] Finally, we address petitioner's argument that the acts for which she was terminated, if proven, constitute unsatisfactory job performance, rather than unacceptable personal conduct.

N.C.G.S. § 126-4, "Powers and duties of State Personnel Commission," directs that "[s]ubject to the approval of the Governor, the State Personnel Commission shall establish policies and rules governing each of the following: . . . (7a) The separation of employees." Accordingly, the SPC has drafted 25 NCAC 1I .2301(b) (2002), which provides that "[t]he basis for any disciplinary action taken in accordance with this policy falls into one of the two following categories: (1) Discipline imposed on the basis of job performance; [or] (2) Discipline imposed on the basis of personal conduct." Personal misconduct includes, *inter alia*, "conduct for which no reasonable person should expect to receive prior warning" and the "willful violation of known or written work rules." 25 NCAC 1I .2301(b) explains: "The Job Performance category is intended to be used in addressing performance-related inadequacies for which a *reasonable person would expect to be notified of and allowed an opportunity to improve.* Personal Conduct discipline is intended to be imposed for those actions for which *no reasonable person could, or should, expect to receive prior warnings." Fuqua v. Rockingham County Bd. of Social Services,* 125 N.C. App. 66, 71, 479 S.E.2d 273, 276 (1997) (emphasis added).

We have previously concluded that substantial evidence supported the SPC's conclusion that "petitioner had willfully violated known or written work rules" by discarding nourishments that she was directed to feed residents. However, our determination of whether petitioner's conduct constitutes unacceptable personal conduct requires more than a mechanical application of 25 NCAC 1J.0614(i)(4) ("Unacceptable Personal Conduct is . . . (4) the willful violation of known or written work rules"). This Court previously has held that a mere "technical" violation of a work rule will not necessarily bring an employee's conduct within the statutory definition of unacceptable personal conduct. *Steeves,* 152 N.C. App. 400, 567 S.E.2d 817 (inadvertent violation of administrative requirement did not rise to the level of unacceptable personal conduct). Several considerations have been identified by this Court as relevant to our determination of this issue, including: (1) whether the violation was willful or unintentional, (2) whether the conduct pertained to the primary function of the agency, or to an ancillary administrative rule, (3) whether the 'disruption of work or safety of persons or property' was implicated by the conduct, and (4) whether the petitioner's conduct

would likely cause any detriment to the agency. Thus, while the unwitting violation of a pre-audit requirement by the director of a county agency is not unacceptable personal conduct, *see Steeves, id.*, a county agency director's intentional evasion of state laws governing purchasing and contract bids is sufficient to uphold the SPC's termination of petitioner for unacceptable personal conduct. *Fuqua*, 125 N.C. App. at 74, 479 S.E.2d at 278 (this Court "must affirm the trial court's determination" if the "Board's dismissal of petitioner was supported by substantial evidence in the record and not arbitrary or capricious, or erroneous as a matter of law."). Similarly, where evidence showed that a prison guard left his post to smoke, read a novel, or sleep, the possibility of danger to persons or property renders his conduct unacceptable, and is sufficient to uphold the SPC's finding of just cause for termination. *McNeely*, 135 N.C. App. at 593, 521 S.E.2d at 734 ("respondent's behavior in leaving his post without authorization and failing to remain alert while on duty falls squarely within the category of unacceptable personal conduct").

In the present case, petitioner was terminated primarily for multiple instances of throwing out nourishments intended for the residents in her care. We conclude that such behavior "falls squarely within the category of unacceptable personal conduct." *Id.* Her conduct was not a technical violation of an administrative regulation, but the willful failure to carry out one of the basic functions of her position. Further, evidence was presented that withholding or exchanging food could be detrimental to the health of certain residents. Most residents of NCSCC were completely dependent upon the HCTs—unable to leave the facility, incapable of obtaining other food, and in most cases unable even to articulate their needs to another HCT. Petitioner's conduct in intentionally discarding bedtime snacks to complete the evening rounds more quickly meets respondent's definition of neglect, and her intentional indifference to the effect of this on residents' health and quality of life constitutes both "conduct for which no reasonable person should expect to receive prior warning," as well as "willful violation of known or written work rules."

We conclude that the SPC's conclusion, that there was just cause to terminate petitioner based on evidence that petitioner engaged in unacceptable personal conduct, was supported by substantial evidence in the record. For the reasons discussed above, we hold that the trial court did not err in affirming the SPC's order which upheld respondent's termination of petitioner's employment. The trial court's order is Affirmed.

Chief Judge EAGLES concurs.

Judge WALKER dissents.

WALKER, Judge, dissenting.

I respectfully dissent from the majority opinion affirming the order of the trial court.

This matter was heard by an able and experienced administrative law judge (ALJ), who made extensive findings and conclusions and recommended that petitioner not be terminated for unacceptable personal conduct pursuant to N.C. Gen. Stat. § 126-35 (2001), but instead be given a written warning for unsatisfactory performance. The State Personnel Commission rejected the ALJ's recommended decision with two members dissenting.

After careful review of the record, I agree with the findings and conclusions of the ALJ. The evidence raises no more than a permissible inference that petitioner engaged in the conduct for which she was dismissed.